CLARK B. DAVIS and LELAND HYZER, as Trustees, etc., v. THE HEFTY PRESS, INC., et al.

11 So. (2nd) 884         · January Term, 1943
February 12, 1943             Division B
Rehearing Denied March 3, 1943

*Hyzer & Padgett, Inman Padgett* and *Thomas H. Teasley,* for appellants.

*E. F. P. Brigham,* for appellees.

THOMAS, J.:

In a suit by The State Life Insurance Company against The Hefty Press, Inc., both corporations, a final decree was entered foreclosing a mortgage given by the latter and ordering the sale of the encumbered property consisting of personalty, which we will presently describe, and certain real estate. The special master's sale was approved and, according to the record, there was attached to the court's order of confirmation "an assignment from H. I. Holding Company [evidently the purchaser] to Clark B. Davis and Leland Hyzer, as Trustees for Miss Anna M. Rose," and others. The court directed the master to deliver to these assignees "purchaser[s] at said sale, his master's deed conveying to the said purchaser[s] title to the property sold under the final decree. . . ."

Eventually, the assignees sought a writ of assistance to remove the defendant, The Hefty Press, Inc., Mrs. Isabel Hefty and Alvah Lee Hefty from the land and to place the petitioners in possession of it and of the personalty, "machinery and equipment."

In addition to reciting the history of the sale and the acquisition of title to all of the property the petitioners represented that they had made an agreement with the respondents, evidenced by a letter dated 29 April 1941, to give the latter an opportunity to acquire a part of the personalty.

This communication was addressed to Clark B. Davis, one of the above trustees, and was signed by Isabel Hefty for The Hefty Press, Inc. In it appreciation was expressed for the addressee's "services in endeavoring to save for us something out of the foreclosure . . . ." It was further stated:

"We realize that we appealed to you only two days before the foreclosure sale was to have been confirmed by which we have entirely lost our property, and that through your efforts the court granted a ten-day extension before confirming the sale." After representing that there were duplicate sets of the machinery it was agreed that if one of them produced not less than ten thousand dollars the other was to be released to Mrs. Hefty and Alvah Lee Hefty; on the contrary, if one did not bring that amount so much of the other set was to be sold to the signer, or others, as were necessary to make up the deficit. The Hefty Press, Inc., was given not less than sixty days and not more than ninety days to accomplish the "liquidation" of the equipment. By the same letter possession of the real property was to be surrendered within one hundred and twenty days.

Adverting to the petition for writ of assistance, it was alleged that the appellees were notified about six months after the letter was signed that the promises made in it had not been fulfilled and that even as late as December, 1941, the appellees sought and received permission to remain on the property two weeks longer. Finally, in January, 1942, notice was given them to vacate by the tenth day of the following month.

The reply to the petition gave in detail the negotiations between the respondents and one of the trustees preceding the signing of the letter we have described. It contained the assertion that theretofore arrangements much more advantageous to the respondents had been made and that the letter was signed under duress of the trustee who was acting for all of the assignees. Even so, it was alleged, the respondents "tried desperately to comply" with the agreement.

A special master heard the testimony relevant to the issues formed by the petition and answer and recommended that the writ of assistance issue.

Exceptions to his report were sustained by the chancellor who held: (1) that Isabel Hefty and Alvah Lee Hefty were equitable owner of one half of the machinery and equipment; (2) that petitioners should "forthwith" deliver it to them; (3) that *The Hefty Press, Inc.*, and the individual respond-

ents should surrender to the petitioners, as trustees, possession of all of the real estate "within fifteen (15) days after delivery . . . of said good and sufficient deed conveying . . . the legal title to the property described [the machinery and equipment] . . . "

Thus, there developed this contest between the assignees of the purchaser at the foreclosure sale, none of whom was a party to the original suit, and the defendant The Hefty Press, Inc., and the persons interested in that corporation.

At the outset it seems to us that the letter from which we have freely quoted showed plainly the intention of all the parties to the immediate controversy. Property had been sold pursuant to a decree of foreclosure and the sale had been confirmed. The purchaser's assignees agreed that a part of the personalty should be sold to realize a certain sum. Opportunity was given the mortgagor, or those owning stock in it, thus to salvage some of their property. They acted under it and received its benefits, because they continued to occupy the realty and to use the personalty for many months, not only for the original term fixed but during extensions granted by the assignees.

It is true that much testimony was offered in an attempt to show that the letter was signed by Isabel Hefty on behalf of The Hefty Press, Inc., under duress relied upon seems to have consisted of an unwillingness, or reluctance, to execute the letter because its terms were less generous than the respondents expected or wished. It is difficult to comprehend how the person who signed the letter was deprived of the exercise of her free will. It will be remembered that in the instrument there was an acknowledgement of appreciation for the actions of the addressee in his attempt to save to the mortgagor, and those interested in it, some of the property. Clearly, nothing was being exacted from the signer or those for whom she acted, because as matters then stood those with whom she dealt were entitled by an order of the court to a deed conveying the property and, we may add, to a writ of assistance if that became necessary to effectuate the transfer.

The master found that "even if said letter had been signed under duress" its provisions had been ratified and we

353

think that he was correct. The ones who now complain that the arrangement was infected in that manner recognized it and actually benefited under it. They retained possession of the realty, in which they, admittedly, have no claim, and used the machinery for more than nine months.

Assuming that duress was present in the execution of the instrument, which position we do not favor, the agreement would not have been void, but only voidable, Ferrari v. Board of Health, 24 Fla. 390, 5 So. 1, and could have been, and was, subsequently, ratified, any so-called duress having plainly been removed. 17 Am. Jur., Duress and Undue Influence, page 902.

We are unable to appreciate the argument presented by appellees that one of the trustees with whom they dealt was likewise their fiduciary. The history of the transaction, as we have given it, refutes the contention that such a relationship existed; nor have we found in the record evidence of any legal fraud practiced by the one party upon the others.

The effect of the chancellor's order is to continue the appellees in possession of the real estate, which they do not claim, until they are given a part of the personal property despite the facts that the amount mentioned in the letter has not been realized and the time allowed for delivery under the agreement, and the extensions of it, has long since elapsed.

The decree of the chancellor is reversed with directions to issue the writ of assistance.

BUFORD, C. J., BROWN and SEBRING, JJ., concur.