**Ernest PAROCZAY, Plaintiff,**

v.

**Luther H. HODGES, individually and as Secretary of Commerce of the United States, et al., Defendants.**

**Civ. A. No. 3085–60.**

United States District Court
District of Columbia.

June 21, 1963.

Supplemental Memorandum and Order
June 26, 1963.

Donald H. Dalton, Washington, D. C., for plaintiff.

David C. Acheson, U. S. Atty., Charles T. Duncan, Principal Asst. U. S. Atty., Joseph M. Hannon, Gil Zimmerman, Asst. U. S. Attys., for defendants.

YOUNGDAHL, District Judge.

The prior history of this case is fully set forth in the opinion of the Court of Appeals of December 28, 1961. Paroczay v. Hodges, 111 U.S.App.D.C. 362, 297 F.2d 439 (1961). Following the decision of the Court of Appeals, the case was remanded to the District Court, which on March 20, 1962, remanded the case to the Civil Service Commission "with directions to conduct further administrative proceedings, including an oral hearing, not inconsistent with the aforesaid opinion of the Court of Appeals * * *." The opinion of the Court of Appeals indicated that the sole issue in the case is whether the plaintiff's resignation of February 17, 1960, from the Department of Commerce was voluntary or involuntary. If the resignation was voluntarily given, then plaintiff has no right to the reinstatement in government employment which he seeks in this law suit. If the resignation was involuntarily given, however, then plaintiff's separation from government employment constituted a discharge, and he would be entitled to certain procedural rights under the Veterans' Preference Act, 111 U.S.App.D.C. at 364, n. 4, 297 F.2d at 441, including the right to respond on the merits to certain charges made against him. Upon remand to the Civil Service Commission, the Appeals Examining Office held a hearing and concluded, in an opinion filed June 7, 1962, that the resignation was voluntary. This decision was affirmed by the Commission's Board of Appeals and Review on January 15, 1963. Both plaintiff and defendants have now moved for summary judgment in this Court.[1]

In reversing the earlier conclusion of the District Court to the effect that the.

1. The charges against plaintiff—which concerned alleged homosexual incidents—were never heard on their merits by either the Department of Commerce or the Civil Service Commission, because of the conclusion that plaintiff had voluntarily resigned his employment. The derogatory allegations were revealed to the Department of Commerce by the United States Air Force, of which plaintiff was an officer while also being employed in the Department of Commerce as a meteorologist. An Air Force Board of Inquiry held a full hearing on the merits on July 25, 1962, and concluded that plaintiff engaged in no such acts after becoming a member of the Air Force. In view of certain prior acts, however, the Board of Inquiry recommended that plaintiff "be discharged under honorable conditions." The Secretary of the Air Force, however, upgraded the discharge to a full "honorable discharge." In a letter dated May 1, 1963, Col. Vincent J. Lozito, Chief of the Air Force Separations Branch, explained the Secretary's action as follows: "The upgrading of this type of discharge to honorable should eliminate any adverse stigma created by the recommendation of the Board of Inquiry." The letter was filed in this Court on June 7, 1963, following the hearing on the motions for summary judgment.

:resignation was voluntary, the Court of Appeals noted that there were conflicting :affidavits relating to the issue of voluntariness and that this precluded summary judgment. 111 U.S.App.D.C. at 363, 297 F.2d at 440, 441. One of these affidavits was made by Mr. Davis, a personnel officer of the Department of Commerce. The other was made by the plaintiff. These affidavits described conversations between these two men on February 16 and 17, 1960. Concerning these affidavits, the Court of Appeals stated:

> "The events of the 17th are the critical ones; for on the 16th, while he was given the alternative of resigning or facing charges, there was then no suggestion of necessity for an immediate decision. On the 17th for the first time plaintiff, according to his affidavit, was pressed into an immediate decision at the interview; he was then faced for the first time with being charged with serious misconduct unless he resigned then and there. The affidavit that this occurred raised an issue as to the voluntariness of the resignation.
>
> \* \* \* \* \* \*
>
> "Of course, the defendants should be given an opportunity to contradict the statements of plaintiff as to the occurrences on the 17th and to establish the voluntariness of the resignation signed on that day. We hold only that in the form in which the versions of the facts were presented by affidavits to the Commission the resignation was not demonstrated to have been voluntary, and that in the District Court there was presented a material issue of fact in that regard which made the case inappropriate for disposition by summary judgment." 111 U.S.App.D.C. at 364, 297 F.2d at 441.

Implicit in this holding by the Court of Appeals must be the conclusion that if the facts as related by the plaintiff are substantially true, then plaintiff would be entitled to summary judgment.

■ As to the events of February 16, the allegation which the above-quoted portions of the Court of Appeals opinion show to be essential is that on that date, plaintiff received "no suggestion of necessity for an *immediate* decision." 111 U.S.App.D.C. at 364, 297 F.2d at 441. (Emphasis added). This allegation was not controverted in Mr. Davis' affidavit, which stated merely: "I told [the plaintiff] that the information was very serious and if true, would warrant his removal from the service, and that when the detailed information [of derogatory allegations] was received, I would have to file charges leading to his removal." At the hearing before the Appeals Examining Office of the Civil Service Commission, both plaintiff and Mr. Davis testified substantially to the effect that there was no mention on February 16 that on the next day plaintiff would be faced with a choice of resigning immediately or facing charges. Plaintiff testified that Mr. Davis "didn't have the official report" and that Mr. Davis "said it would take 5 or 6 days for the report to come down from the office." (Tr. 32–3.) On this issue, Mr. Davis testified that plaintiff "made mention of wanting to go out of town" for "approximately a week or so,"

> "and he wondered if he could just take this week, and my office do nothing about initiating any letter of charges until he had had a chance to think things over a little bit, and I told him this was not the kind of information I could just sit around and wait a week on, after he had admitted these things, both to us and to the Department." (Tr. 54.)

On the basis of this testimony, the Board of Appeals and Review concluded that on February 16 the plaintiff "must certainly have understood that charges looking to his removal would be preferred without delay as soon as Mr. Davis received a written report from the Security Control Office \* \* \*." There is no reason to disturb this finding of the Board of Appeals and Review, since the crucial finding required by the Court of Appeals—that plaintiff received no suggestion of necessity for an *immediate*

decision—is not controverted. When plaintiff left Mr. Davis on February 16 he knew that he could prevent charges being filed by resigning, but there was no indication that on the next day he would be faced with the need for an immediate decision. Indeed, the interview of the next day was sought by the plaintiff, not by Mr. Davis. Some urgency there was, of course; but plaintiff did not know, and had no reason to know, that the night between February 16 and February 17 would be his sole chance to consult family or others for advice.

As to the events of February 17, it is undisputed that on the morning of that day plaintiff came to see Mr. Davis to deny the derogatory allegations which he had admitted the day before. Plaintiff's version of the conversation, as quoted by the Court of Appeals from his affidavit, was as follows:

> "the said J. J. Davis said, 'If you do not resign now, I will press charges immediately. As soon as I go into the front office, I will start proceedings;' I asked the said J. J. Davis for a few days to think the matter over and he said, 'No, once you leave this office, I will start proceedings right now. Sign now;' without advice of counsel or an opportunity to discuss the matter with my wife or friends, and being apprehensive of being held up to public obloquy, I signed a 'form' resignation * * * on February 17, 1960, and effective March 18, 1960 * * *." (quoted at 111 U.S.App.D.C. at 363–364, 297 F.2d at 440).

At the hearing before the Appeals Examining Office, the following answers were given by Mr. Davis to questions propounded by plaintiff's attorney relating to whether the above-quoted account of plaintiff was substantially correct:

"Q. Didn't you tell him you only had one thing to do, file charges? A. I told him I thought I had no choice but to file charges, yes, sir. (Tr. 70.)

*  *  *  *  *

"Q. Did he ask you that he would like to consult an attorney at that time? A. No, sir, he did not.

"Q. Did he ask you that he would like to take some time to think the matter over? A. Yes, sir.

"Q. What was your answer to that? A. I told him I would have to go ahead and file the charges.

"Q. In other words, he couldn't think it over? A. He could think it over as long as he wanted to but I would not refrain from filing the letter of charges. (Tr. 75.)

*  *  *  *  *  *

"Q. In other words, you testified if [plaintiff] didn't sign this, you wouldn't give him any time at all to sign this. Is that correct? A. I testified I was going to file the charges against him that day.

"Q. Immediately. Is that correct? A. That same day, yes, sir.

"Q. Did he ask to take the resignation out of the office? A. Yes, sir.

"Q. And you said he couldn't do it? A. No, sir, I did not.

"Q. What did you say? A. I told him he could take it with him if he wanted to, but I would have to go ahead and file the letter of charges.

"Q. Do I interpret correctly, if you didn't have a resignation in your hands, you were going to prefer charges. Is that correct? A. I think this is a fair statement, yes, sir.

"Q. In other words, as soon as [plaintiff], if he didn't give you that resignation right now, you were going to go and prefer charges? A. I intended to have the letter initiated that same day, yes, sir. (Tr. 76–7.)

*  *  *  *  *

"Q. [Plaintiff] said that you said this, 'If you do not resign, now, I will press charges, immediately; as soon as I go into the front office, I will start proceedings, immediately.' Now, is that a correct answer to

the situation? A. I don't think this is the way I would have said it. I think I would have told him I intended to file charges.

"Q. Just a minute. Don't say what you intended to do. The Examiner is only interested in what actually occurred. A. If I understand you correctly, you are asking me whether I said this exact statement?

"Q. That is right. A. I don't know whether I said that exact statement. I don't think I said it that way.

"Q. You may have said it? A. I don't know whether I said it or not.

"Q. The gist of it was what you have done? A. I will be glad to state the gist of it.

"Q. He either handed you that resignation, and if he didn't you were going to file charges against him? A. This is correct. (Tr. 78–9.)"

In the face of the above testimony, the Board of Appeals and Review concluded that the resignation was voluntary. To support this conclusion, the Board drew upon the following facts, none of which is disputed:

First, that plaintiff had on February 16 "been informed about the intention to prefer charges against him and about his rights in that connection * * *." (p. 11.)

Second, that plaintiff "sought to prevent issuance of any charges by repudiating previous admissions * * *." (Ibid.)

Third, that plaintiff "then sought * * to prevent issuance of any charges by submitting a resignation which he knew would be immediately and irrevocably accepted." (Ibid.)

Fourth, that plaintiff "had been fully informed that he did have several choices beside immediate resignation"—namely, the choice of letting the charges be filed and denying them on the merits, or letting the charges be filed and then resigning, which latter alternative would have left the charges as a part of his personnel record. (Ibid.)

Even though none of these facts is disputed, the ultimate conclusion drawn from those facts—that the resignation was voluntary—cannot stand in the face of the legal standards for voluntariness implicit in the opinion of the Court of Appeals. The allegations of plaintiff in the affidavit quoted by the Court of Appeals are in no essential way controverted; indeed, the above-quoted testimony of Mr. Davis supports plaintiff's allegations in all substantial respects: plaintiff was faced with a choice between resigning then and there and having the charges not become a part of his personnel record, or refusing to resign and facing charges; and a specific request for time to think the matter over was denied. The Court of Appeals, in distinguishing Rich v. Mitchell, 106 U.S.App. D.C. 343, 273 F.2d 78 (1959), cert. denied, 368 U.S. 854, 82 S.Ct. 91, 7 L.Ed. 2d 52 (1961), said that in Rich

"there was no demand for an immediate resignation under threat of immediate charges. The employee was not told to 'sign now.' He was given three days within which to consider the course he would adopt. A request for opportunity to consult family and friends was not rejected, as plaintiff's affidavit states occurred in this case." 111 U.S.App.D.C. at 364, 297 F.2d at 441.

The Board of Appeals and Review must have concluded that there is a legal difference between facing a "choice" of resigning immediately or facing charges, and facing a "demand" for an immediate resignation under "threat" of immediate charges. The above language which the Court of Appeals used to distinguish Rich, and the two cases cited by the Court of Appeals, 111 U.S.App. D.C. at 364, 297 F.2d at 441, demonstrate that this conclusion is erroneous, and that in the circumstances of this case, the very posing of the choice under an admitted threat of immediate charges rendered the resignation involuntary. As was stated in one of the two cases, "A voluntary act is an act proceeding from one's own choice or full consent unim-

pelled by another's influence." Kasumi Nakashima v. Acheson, 98 F.Supp. 11, 12 (S.D.Cal.1951). And as was stated in the other case, "it is * * * the general rule that a claim of duress cannot be sustained where there is full knowledge of the facts of the situation and *ample time and opportunity for full and free investigation, deliberation and reflection.*" Weisert v. Bramman, 358 Mo. 636, 216 S.W.2d 430, 434 (1948). (Emphasis added.)

In the present case, the essential reason why the resignation must be held involuntary is that the choice was one which plaintiff was forced to make *immediately,* without time and opportunity— which was specifically requested and denied—"for full and free investigation, deliberation and reflection," Weisert, supra. There is no showing that the charges had to be filed immediately: they related to alleged incidents of a homosexual nature which had occurred some time before, including alleged incidents in his youth. There is no showing that national security was in any way involved, or that any other reason existed for immediate action. In fact, plaintiff's actual employment was not terminated until March 18, 1960, the date his resignation became effective. The Court of Appeals commented upon this fact as "demonstrating that Mr. Davis did not consider immediate termination of employment essential to the good of the service." 111 U.S.App.D.C. at 364 n. 4, 297 F.2d at 441. While there was thus no need for immediate action on the part of the government, there was, on the other hand, every reason to permit full and careful deliberation over a choice which would profoundly affect plaintiff's career possibilities and his reputation. Such deliberation was particularly important in view of plaintiff's fear that his case might become a *cause célèbre.* Balancing these

considerations, this Court—in line with the standards indicated by the Court of Appeals—must conclude that the need to make an immediate choice denied plaintiff the process which was due him under the circumstances, and that the resignation submitted on February 17, 1960, was involuntary.[2]

Since plaintiff's resignation was involuntary it was void and of no effect; hence he was never legally separated from his position in the Weather Bureau of the Department of Commerce. This Court will therefore order plaintiff's reinstatement to his position as of the date of his unlawful removal, together with all rights, benefits and privileges that would have accrued from a continuity of service from the date of such unlawful removal to the present. This order will, of course, be without prejudice to the right of the Department of Commerce to institute charges against plaintiff, although the Court indicates no opinion as to whether such charges should be made in view of the honorable discharge which the Air Force issued after a full hearing on the merits, supra n. 1.

## SUPPLEMENTAL MEMORANDUM AND ORDER

This Court's order of June 21, 1963 contained the following language:

"That plaintiff be reinstated to his position in the Department of Commerce as of the date of his unlawful removal, together with all rights, benefits and privileges that would have accrued from a continuity of service from the date of such unlawful removal to the present * * *."

This language is substantially identical with that used by plaintiff in the prayer of his complaint. Now, after the Court has granted plaintiff's motion for summary judgment, the defendants, for the first time in any proceedings in this

2. Since this Court has thus concluded that the pressure upon plaintiff to reach an immediate decision was wrongful, the case of Fox v. Piercey, 119 Utah 367, 227 P.2d 763 (1951)—upon which the defend-ants rely for the proposition that in order to constitute duress, "the act or threat constituting duress must be wrongful," 227 P.2d at 766—is therefore beside the point.

case, have informed the Court of objections to such language, on two grounds.

 The first ground is based upon a possible interpretation of the last portion of the above language as awarding back-pay to plaintiff from the date of his involuntary resignation to the date of reinstatement. Defendants point to 28 U.S.C. § 1346(d)[1] as barring the District Court, as distinguished from the Court of Claims,[2] from making such an award. Jurisdictional defects, of course, must be noticed at any time, and this Court therefore hereby expressly restricts the application of its order solely to such "rights, benefits and privileges" as do *not* amount to "fees, salary, or compensation for official services * * *." 28 U.S.C. § 1346(d), supra. Obviously, the order construed in this way cannot cover back-pay. See Borak v. Biddle, 78 U.S.App.D.C. 374, 377 n. 12, 141 F.2d 278 (1944), cert. denied 323 U.S. 738, 65 S.Ct. 42, 89 L.Ed. 591. And see Borak v. United States, 78 F. Supp. 123, 110 Ct.Cl. 236 (Ct.Cl.1948), cert. denied, 335 U.S. 821, 69 S.Ct. 43, 93 L.Ed. 375; Kaufman v. United States, 93 F.Supp. 1019, 118 Ct.Cl. 91 (Ct.Cl. 1950). The government, of course, may well decide to grant such back-pay, subject to applicable principles of law, without forcing plaintiff to bring suit in the Court of Claims. Such disposition would appear completely proper in view of the extended litigation already required in this case.

 The second ground for the defendants' objecting to the Court's language is based not on any jurisdictional defect, but rather upon the suggestion that the Court need not *order* plaintiff's reinstatement, since a mere *declaration* of plaintiff's *right* to reinstatement would lead, in the normal course of governmental routine, to plaintiff's reinstatement. The defendants point again to Borak v. Biddle, 78 U.S. App.D.C. 374, 141 F.2d 278, supra, which

suggested that "courts should be slow in issuing mandamus which may result in interfering with the internal management of executive departments of government." 78 U.S.App.D.C. at 377, 141 F.2d at 281. In that case, the Court of Appeals suggested that the District Court should first issue a declaratory judgment establishing the employee's rights and should retain jurisdiction so that a mandatory writ could issue in the event that neither an appeal nor reinstatement were to follow. Following this suggestion, this Court will therefore amend its order—and it is hereby so amended—to read: "That plaintiff. *is entitled to* be reinstated to his position, etc." The Court will also retain jurisdiction over the case so that a mandatory injunction can issue if the defendants do not appeal within the prescribed statutory period and if they do not reinstate plaintiff on their own initiative at an earlier date.

---

1. "The district courts shall not have jurisdiction under this section of: * * * (2) Any civil action or claim to recover fees, salary, or compensation for official

services of officers or employees of the United States."

2. 28 U.S.C. § 1491.