394 So.2d 494 (1981)
CITY OF MIAMI, Florida, a Municipal Corporation; Howard Gary, As Director of the Department of Management and Budget of the City of Miami; and Manohar S. Surana, As Assistant Director of the Department of Management and Budget of the City of Miami, Florida, Appellants,
v.
Delores KORY, Appellee.
No. 80-1474.
District Court of Appeal of Florida, Third District.
February 17, 1981.
Rehearing Denied March 20, 1981.
*495 Seyfarth, Shaw, Fairweather & Geraldson and Peter J. Hurtgen, for appellants.
Weinsoff & Klausner and Robert D. Klausner, Miami, for appellee.
Before HENDRY, SCHWARTZ and NESBITT, JJ.
SCHWARTZ, Judge.
This is an appeal by the City of Miami from a declaratory judgment, rendered after a non-jury trial, which determined that Delores Kory's resignation as a probationary city employee was void because it was executed under duress. We reverse.
The facts are almost entirely undisputed. Under the civil service rules, an employee may be discharged without cause or explanation at any time during the first six months of employment, after which he attains permanent civil service status. On October 1, 1978, the appellee began work for the city in the Department of Management and Budget. At 1:00 p.m. on March 30, 1979, the last working day of Ms. Kory's probation, her supervisor, Manohar S. Surana, the Assistant Director of the Department, handed her a memorandum, signed by him, which stated that she would be terminated "effective 2:00 p.m. today, Friday, March 30, 1979." After reading the memo, and without prompting from Surana, Ms. Kory told him that she was seeking another position with the city. She asked if, in order to avoid being fired, which would have precluded her securing another city job, it would be possible for her to resign instead. Surana replied that he had no objection to a resignation but that the decision was entirely up to her. After going out to lunch to "give this some thought," Ms. Kory returned at 1:50 p.m. *496 with a handwritten resignation, which bore the time "1:55 p.m.," intended specifically to become effective prior to her discharge. The note stated:
As I can no longer comply with the requirements of the position I occupy, I am tendering my resignation, effective immediately.
Surana accepted the resignation.
During April Ms. Kory made several attempts to obtain other employment from the city and to extend her probationary status with the Department of Management and Budget.[1] After all such efforts proved unsuccessful, she sought the advice of counsel on April 26, 1979. It was then that she first learned the fact which the trial court found to be decisive in granting her relief; although, he testified at the trial, he (like Ms. Kory) did not know it at the time, Surana, as the assistant director of his department, did not have the authority to discharge a probationer. Under the city code, only the director of a department, with the approval of the City Manager, possesses the power to do so.[2] Thus, if Surana's letter had been the cause of Ms. Kory's termination, it would have been ineffective as contrary to the requirements of the city's own regulations. City of Hialeah v. Stola, 330 So.2d 825 (Fla.3d DCA 1976).
This was the basis of Ms. Kory's action below, which was to set aside the instrument which did end her employment with the city, her own resignation of March 30. She contended essentially that the resignation was the product of duress created by the invalid notice of dismissal. The trial judge agreed,[3] set aside the resignation, and *497 ordered the plaintiff restored to the position she would have occupied had it not been tendered  that is, as a non-probationary civil service employee  with full back pay and emoluments. We are unable to approve this conclusion.
An early, and often-cited definition of duress is contained in Herald v. Hardin, 95 Fla. 889, 116 So. 863, 864 (1928):
Duress is a condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition.
Accord, e.g., Cooper v. Cooper, 69 So.2d 881 (Fla. 1954); Corporacion Peruana de Aeropuertosy Aviacion Comercial v. Boy, 180 So.2d 503 (Fla.2d DCA 1965). As this formulation of the rule and all the equivalent ones[4] indicate, there are in essence two factors which must coexist in order to establish duress  one which deals with the party allegedly under duress; the other, with the party allegedly imposing it. It must be shown (a) that the act sought to be set aside was effected involuntarily and thus not as an exercise of free choice or will and (b) that this condition of mind was caused by some improper and coercive conduct of the opposite side. "[U]nderlying all definitions of `duress' is the dual concept of external pressure and internal surrender or loss of volition in response to outside compulsion." 17 C.J.S. Contracts, § 168 at 943 (1963). Although both elements of this duality are indispensable to a finding of duress, we think that neither existed in the present circumstances.

Resignation Voluntary Act of Plaintiff.
As was said in Azalea Drive-In Theatre, Inc. v. Sargoy, 394 F. Supp. 568, 574 (E.D.Va. 1975), rev'd on other grounds, 540 F.2d 713 (4th Cir.1976):
The authorities are in agreement that the ultimate fact to be determined whenever the question of duress is raised is whether the purported victim's will was so overcome as to deprive him of free choice. See generally 25 Am.Jur.2d [Duress and Undue Influence], § 3, at 353 and 355-57; 17 C.J.S. [Contracts § 168], at 948.
On the facts of this case it is clear that Ms. Kory's resignation was to the contrary of this requirement, entirely the product of her own choice. The idea of her resigning was initiated entirely by her, and was not suggested, much less forced upon her by Surana. The case is thus completely different from those cited by the appellee, in which the resignation was affirmatively requested, indeed required by the employer as the only alternative to a similarly unlawful discharge. See, e.g., Paroczay v. Hodges, 219 F. Supp. 89 (D.D.C. 1963); Motto v. General Services Administration of U.S., 335 F. Supp. 694 (E.D.La. 1971), aff'd without opinion, 502 F.2d 1165 (5th Cir.1974), cert. denied, 420 U.S. 927, 95 S.Ct. 1125, 43 L.Ed.2d 398 (1975). In a word, Surana did not tell Ms. Kory to "quit or be fired;" he said, "you're going to be fired," and Ms. Kory asked, "may I quit first?" Furthermore, after she herself raised the possibility of resignation, the plaintiff made a conscious decision to take that course for reasons which seemed to render it in her own best interests to do so.[5] When, as here, a particular course of action is raised on one's own volition, see, Taylor v. United States, *498 591 F.2d 688 (Ct.Cl. 1979); Joseph F. Egan, Inc. v. City of New York, 18 A.D.2d 357, 239 N.Y.S.2d 420, 423 (App.Div. 1963), rev'd on other grounds 17 N.Y.2d 90, 268 N.Y.S.2d 301, 215 N.E.2d 490 (1966), and is finally decided upon in a deliberate and considered choice between alternatives, see, Coffman v. Bolger, 590 F.2d 1366 (5th Cir.1979); Johnson, Drake & Piper, Inc. v. United States, 209 Ct.Cl. 313, 531 F.2d 1037 (1976); McGucken v. United States, 407 F.2d 1349 (Ct.Cl. 1969), cert. denied, 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969); Autera v. United States, 182 Ct.Cl. 495, 389 F.2d 815 (1968), no finding of involuntariness, and thus no conclusion of duress may be sustained.

Resignation not Product of Improper Conduct of City.
Turning to the other side of the coin, the conduct of the city, we find the plaintiff's case equally inadequate. As has been demonstrated, the act supposedly coerced must be caused by some improper or illegal conduct of the defendant. See also, Fuller v. Roberts, 35 Fla. 110, 17 So. 359 (1895). In this regard, it is not improper and therefore not duress to threaten what one has a legal right to do. Spillers v. Five Points Guaranty Bank, 335 So.2d 851 (Fla. 1st DCA 1976), and cases and authorities cited; Scutti v. State Road Department, 220 So.2d 628, 630 (Fla. 4th DCA 1969). To the extent that any action of the city brought about Ms. Kory's resignation, it was obviously and only her proposed discharge. But it is undisputed that the city had the perfect right to do just that, fire Ms. Kory as a then-probationer without cause. See, City of Miami v. Fraternal Order of Police, 378 So.2d 20 (Fla.3d DCA 1979), cert. denied, 388 So.2d 1113 (Fla. 1980). The only aspect of that anticipated action which was arguably improper was the means by which it was about to be effected, that is, by Mr. Surana, rather than the head of the department. It was demonstrated, however, that this irregularity had absolutely nothing to do with Ms. Kory's decision to resign. To carry the burden of establishing the required causal connection between the unlawful conduct of the defendant and a resulting coerced action of the plaintiff, Ms. Kory would have had to show that she would not have resigned if the memo had been executed by the proper official, and thus that she was forced into resigning by the fact that it was signed by the wrong one. The record shows the exact opposite. Ms. Kory was not aware of the procedural deficiency[6] and her actions were completely unrelated to its existence. A voluntary action cannot be deemed the result of duress because the surrounding transaction involves a technical impropriety which is discovered long afterwards and which has no influence on the result. See, Mills v. Forest Preserve Dist. of Cook County, 345 Ill. 503, 178 N.E. 126 (1931).
Even if, as it did not, the "improper" feature of the discharge had something to do with the resignation, the actions of Surana could not be deemed coercive. As the trial judge found, he was totally unaware of the contrary rule, and believed in good faith that he had the authority himself to fire the plaintiff. Thus, the principle stated as follows in 13 Williston on Contracts § 1606, at 672-73 (3d ed. Jaeger rev. 1970) is directly applicable:
[A] threat to bring a civil action or to resort to remedies available under a contract is not such duress as will justify rescission of a transaction induced thereby. This is true even though it is subsequently determined that there is no legal right to enforce the claim, provided the threat is made in good faith, i.e., in the reasonable belief that a possible cause of action exists.
*499 Accord, e.g., Weiner v. Minor, 124 Conn. 92, 197 A. 691 (1938); Morrill v. Amoskeag Savings Bank, 90 N.H. 358, 9 A.2d 519, 524 (1939). In submitting a memo he sincerely believed was effective to terminate her, Surana simply did nothing wrongful toward the plaintiff, which could vitiate her subsequent decision to resign.
Approaching the issue from a somewhat different point of view, the plaintiff's position is really that the anticipated discharge was in breach of the civil service rules. If that were so, she had a perfectly satisfactory remedy for reinstatement in the courts, just as did the plaintiff in the case upon which she so heavily relies, City of Hialeah v. Stola, supra. The rule is, however, that threatened action cannot constitute duress, when there are adequate legal remedies available with which to challenge it. E.g., Hartsville Oil Mill v. United States, 271 U.S. 43, 46 S.Ct. 389, 70 L.Ed. 822 (1926); Vines v. General Outdoor Advertising Co., 171 F.2d 487 (2d Cir.1948) (per L. Hand, J.); Tri-State Roofing Co. of Uniontown v. Simon, 187 Pa.Super. 17, 142 A.2d 333 (1958). This principle is particularly applicable to employment situations such as this "because a suit will effectively supply damages or other reparation." 13 Williston, supra, § 1621, and cases collected at 764, n. 4. Had the plaintiff desired to challenge the discharge, she should and could have done so;[7] her choice not to take that course cannot be deemed the result of duress. See, Christie v. United States, 207 Ct.Cl. 333, 518 F.2d 584, 587 (1975) ("[P]laintiff chose to resign and accept discontinued service retirement rather than challenge the validity of her proposed discharge for cause. The fact remains, plaintiff had a choice. She could stand pat and fight. She chose not to.") [e.o.]; C. & J. Michel Brewing Co. v. State, 19 S.D. 302, 103 N.W. 40 (1905) (tax payments made, without filing protective suit, pursuant to non-coercive request of state officials, held voluntary and not product of duress even though statutory authorization for taxes subsequently ruled unconstitutional).
In the last analysis, what Ms. Kory did was take a voluntary action which seemed like a good idea at the time.[8] In hindsight, it turned out to have been a mistake;[9] what she should have done was let herself be improperly fired and then inevitably win the subsequent lawsuit. But "[i]t cannot [therefore] be held that [s]he acted under duress, for, if so, every settlement of a disputed matter made under a mistake of law could be overturned." Mills v. Forest Preserve Dist. of Cook County, supra, 345 Ill. 503, 178 N.E. at 131.
For the reasons stated, the judgment below is reversed and the cause remanded with directions to dismiss the complaint.
Reversed and remanded.
HENDRY, J., dissents.
NOTES
[1] The city claimed that these actions amounted to a ratification of the resignation. Our decision makes it unnecessary to address the argument that the trial judge's rejection of this contention was erroneous.
[2] § 6(d) of the City of Miami Civil Service Rules and Regulations provides:

Said probationary employee may be returned to his former classification or, in the event he holds no permanent status in any class, may be discharged or reduced in rank at any time prior to the expiration of the probationary period upon receipt by said probationary employee of a written notice of discharge or reduction in rank from the Director of the Department, approved by the City Manager.
[3] On this issue, the final judgment stated:

It is uncontradicted that there is no mutual agreement between the CITY OF MIAMI and DELORES KORY in withdrawing her resignation. The question of whether or not the resignation was properly accepted pursuant to the rules and regulations promulgated by the CITY OF MIAMI prior to her seeking to rescind her notice of resignation has not been raised. The question to determine is whether or not the resignation was tendered by the Plaintiff under duress and therefore this Court, through its equity jurisdiction, should rescind same and hold said letter of resignation null and void.
There are three elements necessary to show duress: (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party. In more general terms it can be stated that duress is a condition of the mind produced by an improper external pressure or influence that practically destroys the free agency of a party so that the act of that party was not of her own volition. Fruhauf Southwest Garment Company v. United States, 126 Ct.Cl. 51, 111 F. Supp. 945 (1953); Herald v. Hardin, (Sup.Ct. 1928) 95 Fla. 889, 116 So. 863. The evidence in this case specifically indicates that the Assistant Director intended his memo of termination to effectively discharge the Plaintiff, that he did discuss with her the only other alternative of agency termination would be his agreement to accept her voluntary resignation, that it was the last day of her employment status as a probationary employee, that she was not apprised of the rights afforded her under the Civil Service Rules and Regulations of the CITY OF MIAMI, that she intended to seek another position with the CITY and did [not] want to jeopardize her chances of such employment, that she verbally and by written notice on April 13, 1979, stated her desire to protect what rights she had previously accrued as a probationary employee with the CITY and that pending a determination of her request for extended probationary status, attempted to relieve the pressure of being `fired' by resigning in lieu of being terminated. An otherwise voluntary act can be determined to be involuntary by the totality of the circumstances that produced it. Based on the testimony and all the facts in this case the Court finds that the improper termination of the Plaintiff on March 30, 1979 produced an external pressure on the Plaintiff to protect her rights and her future employability so that she chose the alternative of resignation as she did not have the time or the legal counsel to be properly apprised of the defective termination notice, her rights thereunder, and thus such resignation was an action by the Plaintiff which was not voluntary but produced by government conduct which was wrongful and in contravention of the CITY's rules and regulations. Cf. Roskos v. United States, 549 F.2d 1386, (Ct.Cl. 1977).
[4] E.g., McGucken v. United States, 187 Ct.Cl. 284, 407 F.2d 1349 (1969), cert. denied, 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969); Fruhauf Southwest Garment Co. v. United States, 111 F. Supp. 945, 126 Ct.Cl. 51 (1953), cited in the lower court's decision.
[5] The appellee lays great stress on the fact that less than an hour was available to make this decision. Since, however, the choice was formulated entirely by Ms. Kory, and was not required in any way by the employer, compare Paroczay v. Hodges, supra, it does not matter that she had only a short time to make up her own mind.
[6] The appellee argues that reversal would afford "legal effect to an illegal act," that is, the improper discharge, contrary to our admonition in West v. Board of County Commissioners of Monroe County, 373 So.2d 83, 87 (Fla.3d DCA 1979), that this may not be permitted. This contention fallaciously fails to recognize that the discharge memo never became operative, did not end the plaintiff's employment with the city and is not directly involved in this case. We consider only the separate question of the propriety of Ms. Kory's resignation which did have that effect.
[7] Of course, the fact that she subjectively did not know the notice was technically improper makes no difference in determining the question of whether the defect constituted actionable duress, which must be considered on an objective basis. Coffman v. Bolger, supra.
[8] If she had been able to get other employment from the city, the choice would have been the correct one.
[9] The plaintiff's complaint alleged, in part, that she had acted by mistake, and it is apparent that both she and Surana were laboring under a mutual mistake of law as to his authority to discharge her. As is pointed out, however, in C. & J. Michel Brewing Co. v. State, supra, 19 S.D. 302, 103 N.W. at 41-42, mutual mistake and duress are entirely inconsistent concepts, since action taken by mistake is necessarily voluntary, and duress presupposes that the conduct is involuntary.