LEE A. HOLMAN DISTRIBUTORS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lee A. Holman Distributors, Inc. v. Commissioner
Docket No. 7174-82.
United States Tax Court
T.C. Memo 1987-129; 1987 Tax Ct. Memo LEXIS 129; 53 T.C.M. (CCH) 329; T.C.M. (RIA) 87129; March 11, 1987. *129 Held: Respondent's determinations of the amount of depreciation petitioner must recapture on the sale of certain assets and the amount petitioner received for an agreement not to compete sustained. George Palmer (an officer), for the petitioner. Francis *130 Mucciolo, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: On December 29, 1981, respondent issued a statutory notice of deficiency to petitioner for its fiscal years ended October 31, 1978, and April 19, 1979. Respondent determined deficiencies of $51,624.03 and $278.04 for each year, respectively. After concessions, the issues remaining for decision are the amount of depreciation petitioner must recapture on the sale of certain assets and the amount petitioner received for an agreement not to compete. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner, Lee A. Holman Distributors, Inc., at all times material hereto was a wholesale beer distributing company whose principal office at the time the petition was filed was Jacksonville, Florida. Petitioner's president, sole stockholder, and director during the years in issue was George Palmer. Mr. Palmer purchased all of the stock of petitioner in 1976 when he was co-trustee of the estate of Lee Holman, the company's previous owner. [1]
*131 Before the purchase of the stock was complete, petitioner's largest supplier withdrew its distribution rights from the company, and the company's sales reduced to approximately 20-25 percent of its prior business. As a result, Mr. Palmer found it difficult to make ends meet once he took over the business. In early 1978, believing he had no alternative but to sell the business, he negotiated a sale of all of the company's assets with Robert Lipton, an individual from Ohio who had owned wholesale beer distributorships for 35 years. Mr. Palmer retained two attorneys to represent petitioner in the sale of its assets. Mark H. Rodman, an attorney with experience in the business of selling beer distributing companies, negotiated on behalf of petitioner with Mr. Lipton's attorney and drafted the final versions of the purchase and sale agreements. James D. O'Donnell advised Mr. Palmer with respect to the tax consequences of the sale. Acting on the advice of Mr. O'Donnell, petitioner adopted a plan of complete liquidation pursuant to section 337[2] on April 1, 1978. Petitioner entered into a Contract for Purchase and Sale of Assets (Purchase Contract) with R.L. Lipton, Inc. (RLL, *132 Inc.) and Rosan Leasing, Inc. (Rosan Leasing) on April 12, 1978, and a Contract for Sale of Leasehold Interest (Leasehold Contract) with Robert Lipton individually on the same day. Pursuant to the Purchase Contract, RLL, Inc. agreed to purchase certain of the operating assets and inventory of petitioner's wholesale beer distribution business, and Rosan Leasing purchased certain other assets including furniture, fixtures, tools, and equipment. RLL, Inc. agreed to pay $25,000 for all of the business as a going concern, its goodwill, all customer lists, and service or maintenance contracts. In addition the contract provided that RLL, Inc. agreed to pay $25,000 for petitioner's agreement not to compete. Beer inventory was to be sold after representatives of petitioner and RLL, Inc. took a physical inventory and jointly priced the inventory at petitioner's "Laid-In Cost." [3] The purchase price for containers, cooperage, pallets, and deposits with respect thereto and all inventories *133 of office supplies, maintenance supplies, and point-of-sale and other advertising materials used in the distribution business was to be determined in accordance with an inventory taken by the parties' representatives prior to closing. Also pursuant to the Purchase Contract, Rosan Leasing and petitioner mutually agreed upon the values of petitioner's usable furniture, fixtures, equipment, tools, and vehicles. The parties listed those assets subject to the sale, with corresponding values, in an exhibit attached to the Purchase Contract. The total purchase price allocated to the assets sold to Rosan Leasing was $175,900. Petitioner's leasehold interest in land and the buildings and improvements thereon were sold to Robert Lipton pursuant to the Leasehold Contract. The purchase price allocated to these assets was $400,000. This amount was based on the extent the bank would loan Mr. Lipton the purchase money, a figure based on the replacement cost attributed to the property. No appraisal was *134 relied on for this figure. At no time during the negotiations or drafting of the Purchase and Leasehold Contracts or during closing did Mr. Palmer or the attorneys he retained contend that the values assigned to the various assets and the agreement not to compete were arbitrary or unreal. [4]
Mr. Palmer completed petitioner's tax returns for the years in issue and reported the gain from the sale of the assets on petitioner's return for the year ended October 31, 1978, as "Non-taxable gain on sale of assets -- Pursuant to Section 337." [5] Respondent determined that a portion of the amount received from the sale of assets in the section 337 liquidation was from section 1245 assets and that consequently, petitioner must recapture depreciation in the amount of $125,618. Respondent also determined that $25,000 of the total selling price of the assets was for an agreement not to compete and is taxable as ordinary income. On behalf of petitioner, Mr. Palmer now contends that *135 the written Purchase and Leasehold Contracts do not reflect the negotiated agreement under which petitioner's assets were sold. Specifically, he claims that the $25,000 paid for the agreement not to compete was actually paid for goodwill, and that the purchase price allocable to assets subject to recapture is $119,500, rather than $161,000 as respondent determined, the remaining portion being allocable to goodwill. He also claims that the value attributable to the assets in the leasehold contract is $100,000, the remaining portion being allocable to goodwill. [6]
OPINION Generally, no gain or loss will be recognized by a corporation on the sale of its property [7] within the 12-month period following its adoption of a plan of complete liquidation, provided that all of the assets of the corporation, less assets retained to meet claims, are distributed in complete liquidation within such 12-month period. Sec. 337(a). Notwithstanding this nonrecognition provision, gain must be recognized on the sale of certain depreciable assets. Sec. *136 1245(a). And, in addition, an amount received in consideration for a covenant not to compete which is separately bargained for and severable from goodwill is ordinary income, Sonnleitner v. Commissioner,598 F.2d 464 (5th Cir. 1979); Ullman v. Commissioner,264 F.2d 305 (2d Cir. 1959); Major v. Commissioner,76 T.C. 239, 245 (1981); Lazisky v. Commissioner,72 T.C. 495, 500 (1979), and is not excludable from income under section 337. Harvey Radio Laboratories, Inc. v. Commissioner,470 F.2d 118 (1st Cir. 1972), affg. T.C. Memo. 1972-85. [8]
In the instant case, Mr. Palmer, on behalf of petitioner, does not dispute these exceptions to the general nonrecognition provision of section 337. Rather Mr. Palmer contends that the Purchase and Leasehold Contracts respondent relies upon do not represent the agreements he negotiated with Mr. Lipton. He claims that he entered into the contracts under duress, *137 believing if he did not agree to Mr. Lipton's terms he would lose the sale and would be forced to bankrupt the business. In support of his contention that petitioner should now be able to vary the terms of the contracts and reallocate the purchase price among the assets, Mr. Palmer also claims that the amounts as allocated have no basis in economic reality. Conversely, respondent argues that petitioner is bound for Federal tax purposes by the express terms of the Purchase and Leasehold Contracts. Respondent claims that Mr. Palmer signed the Purchase and Leasehold Contracts on behalf of petitioner and that he knew the contents thereof and he should not now be able to vary the terms of the agreements. For the reasons stated below we agree with respondent. In deciding this issue, respondent urges us to adopt the standard of proof set forth in Commissioner v. Danielson,378 F.2d 771 (3d Cir. 1967), vacating and remanding 44 T.C. 549 (1965), to the effect that petitioner may not take a position contrary to the language of the Purchase and Leasehold Contracts unless proof is adduced which in an action between the parties to the contracts would be admissible *138 to alter their construction or to show their unenforceability because of mistake, undue influence, fraud, duress, etc. This Court generally follows the less stringent rule that when the parties to a transaction have specifically set out the covenants in a contract and have given them an assigned value, "strong proof" must be adduced by them that the agreement does not accurately reflect the contracting parties' intent and the economic realities of the transaction. Peterson Machine Tool, Inc. v. Commissioner,79 T.C. 72, 81 (1982), affd. 84-2 USTC 9885 (10th Cir. 1984), 54 AFTR 2d 84-5407; Major v. Commissioner,supra;Lucas v. Commissioner,58 T.C. 1022, 1032 (1972). However, because the Eleventh Circuit, to which this case is appealable, has adopted the standard set forth in Danielson (see Bradley v. United States,730 F.2d 718 (11th Cir. 1984)) we are constrained to apply that standard in the instant case. Golsen v. Commissioner,54 T.C. 742, 758 (1970), affd. 445 F.2d 985 (10th Cir. 1971). *139 Thus even if petitioner were to produce "strong proof" that the Purchase and Leasehold Contracts do not accurately reflect the parties' intent and the economic realities of the transaction, we cannot alter the terms of the agreement absent a finding that the contracts would be unenforceable in an action between the parties. Commissioner v. Danielson,supra.[9]
Applying this standard of proof, we are satisfied that petitioner has not met this burden. Throughout these proceedings, Mr. Palmer has claimed on behalf of petitioner that he negotiated a purchase price for the business based on an amount equal to a price per case of beer times the number of cases of beer sold during a given period. [10] That purchase price, he claims, was allocated among the various assets *140 at the will of Mr. Lipton, his attorney, and accountant, and does not accurately reflect the values of the assets or the amount the parties intended to be allocated to goodwill. Mr. Palmer alleges that he lacked any bargaining power under the circumstances and that he was forced to agree to the terms due to the financial difficulties of the business. Thus, he contends he entered the contract on behalf of petitioner under duress and petitioner should now be able to alter the terms of the contract to reflect the economic realities of the transaction. We do not agree. Duress is a condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition. Cooper v. Cooper,69 So.2d 881 (Fla. 1954). In order to set aside a contract on the grounds that it was entered into under duress, petitioner must prove Mr. Palmer entered into the contract involuntarily, *141 not as an exercise of free choice or will, and that this condition of mind was caused by some improper conduct of Mr. Lipton or someone on his behalf. City of Miami v. Kory,394 So.2d 494, 497 (Fla. Dist. Ct. App. 1981). Mr. Palmer has not convinced us that he involuntarily entered into the contracts on behalf of petitioner. Although we recognize that Mr. Palmer believed he needed to sell the business, it does not necessarily follow that he agreed to the terms of the sale involuntarily. [11] The attorney employed by Mr. Palmer drafted the final version of the contracts and was present with Mr. Palmer at closing. Mr. Palmer was well aware of the terms of the contracts when he voluntarily entered into them. Moreover, he has presented no evidence in this proceeding indicating that Mr. Lipton or anyone else acted improperly. For these reasons we cannot vary the terms of the written contract, and therefore hold for respondent. Decision will be entered for the respondent.
Footnotes
1. Acting in his capacity as trustee, Mr. Palmer had petitioner pledge all of its assets as security for a loan the proceeds of which he borrowed individually to purchase the stock.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. "Laid-In Cost" refers to the aggregate of petitioner's original invoiced cost for inventory, plus freight charges and all beverage taxes paid or required to be paid by petitioner.↩
4. Mr. Palmer also entered into an agreement not to compete in his capacity individually for $25,000.↩
5. The parties have conceded respondent's adjustments relating to the inventory of the business.↩
6. This fact is irrelevant. See n. 9, infra.↩
7. Sec. 337(b) defines "property" for purposes of sec. 337↩.
8. See also Feller v. Commissioner,T.C. Memo. 1983-119; Rev. Rul. 74-29, 1974-1 C.B. 79↩.
9. Consequently whether the agreement reflects what Mr. Palmer intended, or whether the items actually had the values attributed to them in the contract or the values as claimed by Mr. Palmer are questions not relevant hereto under the rule set forth in Danielson.↩ We note however, that even if the "strong proof" test were applicable, we have serious doubt that petitioner would meet that test.
10. Mr. Lipton also acknowledged that this was the method used to determine the purchase price.↩
11. Mr. Palmer testified himself that Mr. Lipton did not even know that he would have sold the business at a lower price.↩