540 So.2d 174 (1989)
Lawrence A. MULLAN, Appellant,
v.
BISHOP OF THE DIOCESE OF ORLANDO, Etc., Appellee.
No. 87-2351.
District Court of Appeal of Florida, Fifth District.
March 16, 1989.
*175 Gerry L. Clark, of Law Offices of Newman and Eaton, Orlando, for appellant.
Ladd H. Fassett of Smathers, Pleus, Adams, Fassett & Divine, P.A., Orlando, for appellee.
ORFINGER, Judge.
Mullan appeals from an adverse summary judgment in his action seeking damages for allegedly being forced to resign, under duress and threats of immediate dismissal, from his position as a teacher at Bishop Moore High School. Because we find that there exist disputed issues of fact which must be tried, we reverse.
The record reveals that Mullan had taught at Bishop Moore for some 25 years and on June 17, 1986, had executed a written teaching contract with appellee for the period August 15, 1986 through June 10, 1987. As part of his employment, Mullan was to receive a salary as well as certain fringe benefits including insurance, pension and sick leave benefits.
According to the verified amended complaint, on October 30, 1986, Mullan was accused of hitting a student while disciplining that student. Mullan alleged that he was ultimately told by school principal Massaro that he was being terminated and that when he protested, Massaro announced that he could resign with compensation or be fired without being paid, but that either way, Mullan was "gone". Within five minutes Massaro presented Mullan with his fully typed resignation and placed it before him for his signature. According to the amended complaint:
10. Massaro's actions placed the Plaintiff under great duress as the threat of firing without further compensation threatened his family's well being. Principal Massaro's actions both stunned and robbed the Plaintiff of his will to resist the unjust firing and further robbed Plaintiff of his free will to make a reasoned *176 decision about which course of action to take.
11. Principal Massaro's actions were unjust and illegal in that the Plaintiff had not hit the student as charged. A full investigation, which any reasonable man would have carried out, would have revealed the true facts. Plaintiff's written teacher's contract with the school would have prevented Plaintiff's firing without cause.
The amended complaint continued that on December 26, 1986, Mullan submitted a request to appeal and that on February 18, 1987, Massaro advised that the Board of Education would not reverse the original decision.
Mullan filed an affidavit with his amended complaint, averring that "he had not disciplined any student in an illegal manner," that "Massaro had plainly threatened not to pay me any further wages if I refused to resign" and that "absent that threat, I never would have agreed to resign."
Appellee filed the affidavit of principal Massaro who averred that Mullan had been accused of striking a student, that he, Massaro, had investigated the incident and that based on statements made to him by other students who had allegedly witnessed the incident, he had concluded that the accusation was well founded. Appellee moved for summary judgment claiming Mullan resigned from his position, that he accepted the benefits under the resignation agreement, that duress was not shown and that Mullan failed to comply with the appeals alternatives set out in the teaching contract. The summary judgment granted in favor of appellee specified no grounds.
Mullan argues that several material issues of disputed fact exist here, with the primary one being whether he voluntarily resigned his position or instead resigned under duress in which case such resignation would be voidable. See Davis v. Hefty Press, 152 Fla. 385, 11 So.2d 884 (1943). Mullan adds that an additional question of fact concerns whether he actually hit a student, and if so, whether it was improper or in violation of law or rule of the school.
In Herald v. Hardin, 95 Fla. 889, 116 So. 863, 864 (1928) the court noted that:
Duress is a condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition.
Both parties cite to City of Miami v. Kory, 394 So.2d 494 (Fla. 3d DCA 1981), rev. denied, 407 So.2d 1104 (Fla. 1981), on the issue of duress. In Kory, a probationary city employee resigned after being told that she was going to be fired, because she believed that resigning as opposed to being fired would make it easier for her to obtain another city position. After she was unsuccessful in obtaining another job, she sued to have the resignation set aside on the basis of duress. The appellate court reversed the trial court's finding of duress, and posited that in order to set aside an act based on duress, it must be shown: (a) that the act sought to be set aside was effected involuntarily and thus not as an exercise of free choice or will, and (b) that this condition of mind was caused by some improper and coercive conduct of the opposite side. "[U]nderlying all definitions of `duress' is the dual concept of external pressure and internal surrender or loss of volition in response to outside compulsion." Id. at 497.
Analyzing the case before it, the Kory court held that the facts did not support a claim of duress, and that the case was "completely different from [those cases] cited by appellee, in which the resignation was affirmatively requested, indeed required by the employer as the only alternative to a similarly unlawful discharge" because the decision to resign was initiated by the plaintiff and constituted a conscious choice which plaintiff believed was in her best interest. Moreover, said the court, because she was a probationary employee and the city could fire her without cause, it was not improper and therefore not duress to threaten what one has a legal right to do. 394 So.2d at 498. The facts supporting the plaintiff's case here, which we are obliged to accept as true for summary *177 judgment purposes, are completely different from those in Kory, making the result in that case non-supportive of appellee's position.
Mullan asserted in his affidavit that the resignation was Massaro's idea and that Massaro immediately[1] had prepared a typed resignation for Mullan's signature. This evidence, unlike that in Kory, indicates the resignation was announced by the employer as the only alternative to being fired and supports the first essential element of duress.
The second essential element requires that the act supposedly coerced be caused by some improper or illegal conduct of the defendant since, as Mullan concedes, Kory indicates that an employer may use the threat of firing to cause an employee to resign so long as the employer has the legal right to fire the employee. Mullan asserts that unlike the probationary employee in Kory, here he had a legal right to continued employment as per his teaching contract which provides the grounds for termination and that it cannot be said, without dispute, that appellee had the legal right to fire him. The contract provides in relevant part:
5. TERMINATION
* * * * * *
b) The Principal may suspend and/or dismiss the Teacher for good cause, including, but not limited to, misconduct, neglect of duty, physical or mental incapacity, conviction of a felony or of a crime involving moral turpitude, violation of the terms of this Agreement, or any conduct tending to reflect discredit upon the School or tending to impair the Teacher's usefulness as a Teacher.
Despite appellee's argument to the contrary, the question of whether the school had a legal right to fire Mullan requires inquiry into the incident involving the student.
Massaro's affidavit, insofar as it deals with the striking of the student, is based on hearsay and should not have been considered by the court. See Ham v. Heintzelman's Ford, 256 So.2d 264 (Fla. 4th DCA 1971); Page v. Staley, 226 So.2d 129 (Fla. 4th DCA 1969) (an affidavit predicated upon inadmissible hearsay cannot be used in support of or opposition to a motion for summary judgment). Mullan's affidavit disputes the assertion that he illegally struck a student so the extent of the striking and the circumstances surrounding the incident appear to be relevant factual considerations on the question of whether appellee had the legal right to fire Mullan.
Appellee argues that even if Mullan was coerced into resigning, an agreement made under duress is not void, but is merely voidable and may be ratified by the person so coerced. Davis v. Hefty Press, supra. Appellee contends that by accepting his pay through January 15, 1987 and fringe benefits through June 15, 1987, Mullan is deemed to have ratified his resignation. However, the affidavits indicate that Mullan was left with no choice  he could either accept what was offered him or let his family suffer.
The fact that Mullan promptly invoked the administrative remedies provided for in his contract is evidence of his dissatisfaction with his compelled resignation, thus evidence of non-ratification. Moreover, a finding that an agreement induced by duress has been ratified, should be rejected where it appears that at the time of the alleged ratification the duress which originally induced the agreement has continued to operate. See, Annotation: Duress-Ratification of Contract, 77 A.L.R.2d 436, 446 et seq. and cases collected therein; 11 Fla.Jur.2d, Contracts § 44. Under the circumstances here, ratification is a question of fact. It cannot be said as a matter of law that Mullan was required to renounce his pay and eligibility for continued health insurance and other benefits and place his family in jeopardy in order to pursue his complaint.
*178 Finally, we reject appellee's contention that Mullan has no cause of action because he failed to strictly follow the procedural rules outlined in his contract for the resolution of disputes. Mullan petitioned the local Board of Education for relief after the principal rejected his complaint. Appellee contends that the contract requires submission to the Diocesan Office of Education after rejection by the Board of Education, which step Mullan concededly did not take. However, the contract provides that the Board of Education will provide its decision to the teacher within five days after hearing the teacher's objection, yet the Board did not submit its decision to the appellant for some five weeks after the hearing. Having failed to follow its own rules, appellee should not be heard to complain that Mullan did not strictly comply with them.
Because disputed issues of fact exist, the summary final judgment is reversed and the cause is remanded for further proceedings consistent herewith.
REVERSED and REMANDED.
SHARP, W., C.J., and COBB, J., concur.
NOTES
[1] This immediacy aspect distinguishes this case from those where the employee is given an option by the employer and is not subjected to time pressure. See, e.g., Coffman v. Bolger, 590 F.2d 1366 (5th Cir.1979).