684 So.2d 308 (1996)
STATE of Florida, DEPARTMENT OF REVENUE By and on Behalf of Betty Ann TAYLOR, Appellant,
v.
Michael R. DAVID, Appellee.
No. 96-920.
District Court of Appeal of Florida, First District.
December 17, 1996.
Joseph R. Boyd and William H. Branch of Boyd, Lindsey, Williams & Branch, Tallahassee; Chriss Walker of Department of Revenue, Office of Child Support Enforcement, Tallahassee, for Appellant.
Michael R. David, Appellee Pro Se.
PER CURIAM.
This is an appeal of a final order establishing arrearages in the amount of $16,171.35 but denying appellant's claim for back child support. We reverse that portion of the order denying appellant relief due to intentional concealment of the minor child and barring appellant's claim under a theory of laches. In all other respects, we affirm the order below.
The case arises out of an action for contempt brought by the Department of Revenue, on behalf of appellant (the mother) against appellee (the father) for the alleged nonpayment of his child support obligation. Based on a motion filed by the Department to establish child support arrearage, the trial court issued the order which is the subject of this matter. The court determined there existed a child support arrearage in the amount of $16,171.35 which had accrued from February 1989 to January 1996, but denied the mother's claim for back payment on the grounds of the father's allegations of intentional concealment and laches.
The father claims the mother concealed the whereabouts of the child in two ways: first, by placing a restraining order on him to keep him away from her home and second, *309 by not allowing anyone in his family to see the child. However, the father has not pursued any legal relief to enforce visitation rights, claiming he could not afford to go to court and it was too difficult to do himself.
The record clearly reflects that the father knew or should have known that the mother continued to reside in Mary Esther, Florida, until 1991 or 1992. During the period between 1989 and 1991 or 1992, the paternal grandmother visited regularly with the child and even gave a party for the child on his fifth birthday in 1992. Furthermore, the father testified that he has not known the location of the child since 1991, so presumably he did know the whereabouts of the minor child until that time and had access to the child through his mother.
In late 1991 or 1992 the mother moved because her new husband, a military employee, was transferred to MacDill Air Force Base. The father claims he did not know how to find the mother upon her relocation, but at all times the mother and her husband were capable of being located through the base locator service, a nationwide service that allows one to find the duty station of a military employee. Both the father and the grandmother knew that appellant had married, that her husband was a military employee, and were aware of the base locator service. In fact, the father did eventually locate the mother in 1994 by using the base locator service. His reason for contacting the mother, however, had nothing to do with enforcing visitation rights. Rather, he wished to finance a home and needed the mother to agree to drop the support claim, as his credit had been affected.
The leading case in Florida on the question of concealment as it relates to a claim for back pay child support is Hoffman v. Foley, 541 So.2d 145 (Fla. 3d DCA 1989). The facts of Hoffman are easily distinguishable from the facts of the case at hand and clearly illustrate that appellant's actions, in our case, do not rise to the level of "intentional concealment." In Hoffman, shortly after the couple divorced, the mother, who was granted custody of the minor child, remarried and, without notice to her former husband, moved from Florida to Phoenix, Arizona. During that five year period, the father made diligent efforts to locate the mother and child, including contacting missing children agencies. The mother, however, did nothing during that time to enforce support payments, and when she finally contacted the father and informed him of the child's whereabouts, the father immediately resumed support payments and visitation. Hoffman, 541 So.2d at 146.
The record below, on the other hand, reflects that the mother attempted to enforce support payments in 1991 and 1995. The 1991 action was only dropped because the mother moved out of town with her new husband. Furthermore, the father knew or should have known the whereabouts of the child between 1989 and 1991 or 1992, and that after the mother's relocation, she was capable of being located through the base locator service. The father was able to locate the mother using the base locator service and did so in 1994 when he needed her help in providing information that he needed for a financial arrangement. He has not at any time attempted to enforce visitation rights or to begin making child support payments.
Under Florida Statute section 88.271, the noncustodial parent's obligation to pay support is unaffected by any interference with visitation. If visitation is ever denied, the noncustodial parent has remedies to enforce a judgment. See Hoffman, 541 So.2d at 146. Accordingly, courts have distinguished between interference with visitation and actual concealment of the child. If anything, this is a case of interference with visitation as a result of the mother's relocation; however, there is nothing in the record which indicates active concealment.
As to appellee's allegation of laches, the standard is also laid out in Hoffman. "Application of the equitable principle requires a showing of delay by the person asserting a legal right and resultant injury or prejudice by reason of the delay, or a change in position or condition which renders it inequitable to enforce the legal right." Hoffman, 541 So.2d at 146. In a non-URESA child support case, courts focus on the conduct of *310 the custodial parent, such as concealment or any affirmative misconduct which equity will not condone. Id. at 147. In this case, there has been no showing of injury or prejudice due to the delay between the 1991 and 1995 enforcement actions. There are no extraordinary facts or compelling circumstances which would make it inequitable to enforce the action. See id. at 146; Dean v. Dean, 665 So.2d 244, 247 (Fla. 3d DCA 1995).
The injury contemplated is the loss of visitation rights by the father but, as reflected in the record, the father never attempted to visit the child and even now does not plan to pursue visitation rights. Therefore, based on his own testimony, there has been no injury or prejudice to the father. Accordingly, we reverse that aspect of the order denying appellant relief based on allegations of concealment and remand for further proceedings. We affirm in all other respects.
JOANOS, VAN NORTWICK and PADOVANO, JJ., concur.