807 So.2d 659 (2001)
Debra TICKTIN f/k/a Debra Marie Kearin, Appellant,
v.
Michael Moran KEARIN, Appellee.
No. 3D00-288.
District Court of Appeal of Florida, Third District.
October 24, 2001.
Rehearing Denied March 8, 2002.
*661 Scholl, Ticktin, and Peter Ticktin (Boca Raton), for appellant.
Marcia Soto, Coral Gables; Cynthia L. Greene, Miami, for appellee.
Before COPE, and GERSTEN, JJ., and NESBITT, Senior Judge.
PER CURIAM.
Appellant, Debra Ticktin, formerly Debra Kearin ("former wife"), appeals part of an order below finding that appellee, Michael Moran Kearin ("former husband"), properly subtracted certain taxes from his taxable income in calculating child support, and finding that the former wife's claims were barred by laches. We find no basis in the record for the trial court's findings on these issues and reverse in part.

FACTS
The parties were married in 1971 and divorced in 1983. In 1980, they had prematurely born twins with one child suffering from paralysis on the left side of his body, and the other child suffering from severe asthma. Two years later, the former *662 husband accepted a residency in surgery in California with an annual salary of $21,700 before taxes. After the parties separated in 1983, the children returned to Miami with the former wife.
The parties drafted a settlement agreement wherein the parties agreed that the former husband was to pay $300 per month child support. Additionally, the former husband agreed to pay into the children's trust fund "20% of all his taxable income over and above the first $25,000 that he earns each year in the future, until the children reach the age of 18."
The 20% is then divided in two parts, called "Trust A" and "Trust B." Trust A was to be 30% of the 20%, and this amount was to be paid to the former wife (together with the $300 per month) for the ongoing needs of the children. Trust B was to be invested in long term investments and managed by the former husband.
The former husband's child support payments for 1984 through 1986 were sporadic, but eventually the former husband paid the full $300 per month, plus the additional percentage calculated on all of his income. This amounted to approximately $456 per month in 1986. The former husband did not own a home or make charitable contributions during this time, and thus there were no deductions to his income for real estate taxes, mortgage interest or charitable contributions.[1]
In 1987, the former husband stopped making payments for the children to the former wife. Nothing was being paid to Trust A, and no payments had ever been made to Trust B. On November 30, 1987, the former wife filed a petition for modification of final judgment and petition for enforcement of final judgment. The 1987 petition sought modification and alleged the former husband failed to make payments. At no time were any assertions made or considered regarding interpretation of the settlement agreement, and the sole issue in the 1987 petition was whether or not payments had been made.
A month after the 1987 petition was filed, the former husband set up bank accounts for each trust and made his first payment into the Trust B fund. An additional $1,686.00 was paid to the former wife in December of 1987. As a result, the 1987 petition was abandoned. Significantly, up until this time, the former husband did not subtract his income taxes from the amounts paid or use his current definition of "taxable income" in calculating the amount due.
From 1987 through 1990, the parties entered into several agreements with regard to the former husband's payments. For example, in lieu of direct payments to the former wife, the former husband made certain car payments, payments for car insurance, and certain loan payments. The former husband obtained the former wife's written acknowledgments to verify these amounts were being paid toward child support. The acknowledgments were titled "Acknowledgment of Receipt of Child Support" and "Agreement to Method of Child Support Payments," and set forth the specific amount of support paid directly to the former wife for the respective years.
Thereafter, in April of 1991, the former husband provided a statement to the former wife which reflected he was subtracting his income taxes from his taxable income in calculating the child support amount. As explained by the former husband, *663 he computed trust payments by taking the amount listed on his yearly tax return entitled "taxable income", and then reducing this amount by the amount of taxes he paid upon such "taxable income" for the year in question.[2] After receiving this information, the former wife instituted this action in February of 1992 by filing a "Motion for Contempt, for Clarification and To Remove the Respondent as Trustee."
Eventually the case proceeded to trial in 1996. However, prior to entry of judgment, the then-trial judge disqualified himself and the case was re-tried before a General Master in 1997. The General Master disqualified himself and the parties agreed that the newly assigned successor judge could rule upon the case based upon a reading of the transcript and argument of counsel.
In December of 1999, the successor trial judge entered the instant order which found the former wife's claim barred by the doctrine of laches.[3] After reviewing the record and applicable law, we conclude otherwise.

ANALYSIS
Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party. It is an equitable defense, and its applicability depends upon the circumstances of each case. Delay alone in asserting a right does not constitute laches, and the burden is on the party who asserts the doctrine of laches to prove prejudice. See Stephenson v. Stephenson, 52 So.2d 684 (Fla.1951); State, Dept. of Revenue By and on Behalf of Taylor v. David, 684 So.2d 308 (Fla. 1st DCA 1996); State, Dept. of Health and Rehabilitative Services v. Lemaster, 596 So.2d 1117 (Fla. 2d DCA 1992).
In the context of child support arrearage cases, the defense of laches is only applied in extraordinary circumstances where the facts clearly show extreme prejudice. See State, Dept. of Revenue ex rel. Dees v. Petro, 765 So.2d 792 (Fla. 1st DCA 2000); Golden v. Lewis, 647 So.2d 979 (Fla. 2d DCA 1994). As noted in Armour v. Allen, 377 So.2d 798, 800 (Fla. 1st DCA 1979): "the welfare of the child is paramount and in the absence of extraordinary facts or strongly compelling circumstances, the action or inaction of a parent will not give rise to a defense of laches barring enforcement of child support arrearages."
Parents not only have a legal obligation, but also a social and moral responsibility toward the support of their children. Society expects that those who bring children into this world will care for them. Since child support is a legal obligation of the parents to the children, our courts have long recognized that strong public policy proscribes application of laches *664 to child support matters except under the rarest of circumstances. See Hernandez v. Marsarm Corp., 613 So.2d 914 (Fla. 3d DCA 1992), review denied, 624 So.2d 267 (Fla.1993); Wing v. Wing, 464 So.2d 1342 (Fla. 1st DCA 1985); Armour v. Allen, 377 So.2d 798 (Fla. 1st DCA 1979).
Keeping these policy considerations in mind, we next turn to the requirements for establishing laches in family law cases. Although prior decisions have broken down the requirements into different elements, regardless of how those elements are labeled or described, the basic requirements remain the same. The defendant must prove: (1) conduct by the defendant that gives rise to the complaint; (2) that the plaintiff had knowledge of the defendant's conduct and did not assert the opportunity to institute suit; (3) lack of knowledge by the defendant that the plaintiff will assert the right upon which suit is based; and (4) extraordinary injury or prejudice. See McIlmoil v. McIlmoil, 784 So.2d 557 (Fla. 1st DCA 2001); Garcia v. Guerra, 738 So.2d 459 (Fla. 3d DCA 1999); Dean v. Dean, 665 So.2d 244 (Fla. 3d DCA 1995), review denied, 675 So.2d 926 (Fla. 1996).
The former husband claims he has met the elements above, because the former wife chose not to pursue her rights until nine years after the divorce. Further, he claims that this prejudiced his potential ability to seek modification during the time he kept the additional disputed child support monies.
First, we disagree with the former husband's premise that the time frame for examining his laches defense is nine years. We find the trial court's agreement with the former husband on this issue incorrect.
Our review of the record reveals there is no basis for the trial court's finding that the former wife raised the income tax computation issue in her 1987 modification petition. To the contrary, the evidence is clear that the former wife was not aware of any changes or discrepancies in the computation method until 1991, when the former husband first asserted he had the right to subtract his income taxes from the formula.[4] The sole issue raised in the 1987 Petition was whether or not payments had been made.
The trial court's finding that the former wife had knowledge of the computation discrepancy based upon the 1987 proceedings is clearly erroneous. Since, the former wife did not have knowledge of the former husband's conduct in 1987, and thus did not have an opportunity to institute suit on this issue at that time, it was improper for the trial court to utilize a 9 year time frame in its laches analysis.
Second, we disagree that the former husband's alleged potential ability to seek modification during the time he kept the additional disputed child support monies, constitutes clear and positive evidence of the requisite injury or prejudice needed to sustain a laches defense. See Golden v. Lewis, 647 So.2d at 980. The former husband was able to retain a substantial amount of money based upon his interpretation of the computation method and the evidence clearly shows he continues to hold extremely substantial assets.
The mere allegation that modification could have been sought, absent *665 more, does not suffice to establish that type of detrimental change which would render it inequitable to now consider the computation issue. See Stephenson v. Stephenson, 52 So.2d at 684; Gottesman v. Gottesman, 202 So.2d 775 (Fla. 3d DCA 1967).[5] Likewise, the mere inconvenience of having to meet an existing obligation imposed by an order or judgment of a court of record at a time later than that specified in such an order or judgment cannot be called material prejudice.[6]See Connin v. Bailey, 15 Ohio St.3d 34, 472 N.E.2d 328 (1984).
In sum, for purposes of applying the defense of laches, the length of time that passes during which a party neglects the assertion of rights varies with *666 the peculiar circumstances of each case. Unlike statutes of limitations, laches is an equitable defense which is controlled by equitable considerations. Particularly in the context of family law matters, the lapse of time and the prejudice to the defendant must be so extraordinary and significant, that it would be inequitable to permit a plaintiffs action to proceed.
Here, the true inequity lies in the trial court's erroneous finding that laches did apply, where the former wife asserted her rights within 1 year of discovering the reduced amounts paid to the trust fund, and where the former husband did not demonstrate material prejudice resulting from any action on the part of the former wife.
Jurisprudential wisdom in family law matters must go beyond the passive decipherment of legal arguments and requires more than a cursory analysis of applicable case law. We conclude there are no extraordinary facts or compelling circumstances which would make it inequitable to enforce the action, and thus laches does not apply to bar the former wife's claims.
Accordingly, we reverse that part of the order denying the former wife's motion for contempt and for clarification, with instructions to the trial court that the former husband's income taxes shall not be subtracted from the taxable income amount used to form the basis for computing the child support obligation to the trusts. The trial court is further instructed that the term taxable income shall be interpreted in accordance with its specifically and clearly defined dictionary/income tax return definition. That part of the order granting the motion to remove the former husband as trustee is affirmed.
Affirmed in part; reversed in part and remanded with instructions.
NOTES
[1] In fact, there was no "Schedule A" on the former husband's tax returns for 1985 through 1990, and the former husband admitted he never advised the former wife he was subtracting his pension plan contributions.
[2] As noted by the former wife, in effect this meant the children were paying 20% of some of the former husband's expenses. For example, because the former husband deducted his charitable deductions from the basis of the computation, when he donated the children's bicycles and claimed a $2,000 deduction, it effectively cost the children $400 for their bicycles to be given away. The children's trust monies were also lessened when the former husband reduced his taxable income in 1995 by over $62,000 by claiming charitable gifts, and the taxes and mortgage payments on his $750,000 house and his boat. According to the former wife, the exhibits provided at the 1996 trial reflected a total of $511,931.83 of the former husband's income taxes were subtracted, which resulted in depriving the children of over $100,000.
[3] The trial court order also granted the former wife's Motion To Remove the Respondent as Trustee.
[4] Significantly, not until 1996, and only after numerous motions to compel, orders compelling, and motions for contempt for failure to follow those orders, did the former wife receive complete tax return information which established the former husband was taking new deductions on his tax return and using those amounts to lower the amount of child support.
[5] This case does not involve circumstances where large financial obligations were incurred over a 30-year time period based upon the assumption no arrearages were due, see Dean v. Dean, 665 So.2d at 244, or where the father gave up efforts to gain custody and lost the only records to support his custody claim, see Wing v. Wing, 464 So.2d at 1342, or a case where an unreasonable delay on the part of the mother was responsible for the loss of the only records available to support the father's claim, see Garcia v. Guerra, 738 So.2d at 459.

We also find no support for the trial court's apparent finding of prejudice under Garcia v. Guerra, 738 So.2d at 459, on the basis: "[T]he Former Husband was unable to retrieve all of his records in that some were destroyed by Hurricane Andrew. Likewise, the Former Husband was not able to obtain her former attorney's file, which may have contained pertinent documents favorable to him. Furthermore, the witnesses' memories faded as a result of the time lapse between the dates on which the events occurred and the date the Motion for Contempt was filed."
It is not enough for a party to simply claim records are unavailable in order to establish the requisite prejudice to apply laches. There was no evidence presented that the alleged missing documents were the only records which could support the former husband's arguments. Moreover, the time frame for any delay attributable to the former wife was only a year, and any further delay arguably was the result of the former husband's unclean hands, see supra note 6, and infra note 8.
As pointed out by the former wife, the trial court further ignored the fact that Hurricane Andrew did not hit South Florida until 6 months after this action was commenced, the former husband was able to produce every check written since 1983, all of his bank account records, all of his tax returns, and every 1983 handwritten note made on the draft agreements note. The former wife further noted that none of the checks had water-marks, and that the former husband's letters, releases, copies of agreements, etc., were all clean and complete. The record clearly does not support a finding of the requisite prejudice on this basis.
[6] The former husband's current predicament is one of his own making. He simply could have advised the former wife as to how he was defining taxable income for purposes of calculating the amount due to the childrens' trust, and the matter could have been resolved years ago. The fact that he failed to do so at an earlier date, and chose not to assert any potential modification rights, raises issues of "unclean hands" which further prohibits application of the defense of laches to the former wife's motion. See Newman v. Newman, 459 So.2d 1129, 1131 (Fla. 3d DCA 1984) and cases cited therein.

Thus we find no support for the trial court's finding of "detrimental reliance" on the part of the former husband sufficient to establish the prejudice required for laches. The case of Mason v. Mason, 724 So.2d 619 (Fla. 5th DCA 1998), cited in the trial court's order in support of this finding is inapposite.
In Mason, the court found a former husband detrimentally relied on the former wife's ten-year failure to seek cost-of-living adjustments to child support payments and thus her claim was barred by laches. However, the parties' final judgment expressly provided for the specified cost of living increase, the former wife thereafter allegedly agreed to forgo the automatic increase when the former husband's income plummeted, and it was undisputed that with full knowledge of her rights in this regard, she failed to make a claim for 10 years. In an effort to avoid repetitiveness, we believe the facts and analysis throughout this opinion speak for themselves in reflecting the circumstances of the present case are clearly distinguishable.