950 So.2d 1257 (2007)
Scott BAKOS, Appellant,
v.
Cynthia BAKOS, Appellee.
No. 2D05-2163.
District Court of Appeal of Florida, Second District.
March 16, 2007.
*1258 Law Offices of Rubinstein & Holz, P.A., Fort Myers and Cynthia L. Greene of Law Offices of Greene Smith McMillan, P.A., Miami, for Appellant.
Susan W. Fox of Fox & Loquasto, P.A., Tampa and Wendy S. Loquasto of Fox & Loquasto, P.A., Tallahassee, for Appellee.
FULMER, Chief Judge.
In this appeal of a partial final judgment and a final judgment of dissolution of marriage, Scott M. Bakos (the Husband) challenges the trial court's rulings that set aside the antenuptial agreement and the postnuptial agreement executed by the Husband and Cynthia Bakos (the Wife) and the trial court's subsequent equitable distribution of the parties' marital assets, award of alimony to the Wife, and award of child support. We affirm the trial court's ruling that the antenuptial agreement is voidable and reverse the trial court's ruling on the postnuptial agreement. We affirm the final judgment to the extent that it dissolves the parties' marriage. In all other respects, we reverse and remand for further proceedings.
The Husband, a dentist, and the Wife, a dental hygienist, were married in 1987 and had one child together.[1] On the day before the wedding, the parties executed an antenuptial agreement that, among other things, delineated the parties' respective separate property (with the Husband's net assets at about $800,000 and the Wife's at about $12,000) and recited mutual waivers of rights thereto; listed a jointly owned lot (deemed to be owned in a 75:25 ratio by the Husband and Wife, respectively); recited that the Husband would adopt the Wife's child but that the Wife would get custody upon separation or divorce; recited that both parties waived alimony in the event of divorce and waived any death benefits acquired due to the marriage; and allowed for modification of the agreement in writing.
Just under six years into the marriage, the parties executed another agreement (the "postnuptial agreement") to modify the antenuptial agreement. The postnuptial agreement, among other things, recited that the jointly owned lot (now the site of the marital home) was owned 50:50 by the parties; revoked the earlier provisions concerning the Wife's child (who had been adopted by the Husband) and recited an agreement calling for joint custody of the *1259 children upon divorce; eliminated the waiver of death benefits; and recited that the antenuptial agreement would remain in force as to all provisions not modified in the postnuptial agreement. The postnuptial agreement did not expressly address the provisions in the antenuptial agreement regarding alimony and the parties' separate property.
The Husband filed for dissolution in May 2000. The court bifurcated the proceedings, hearing matters related to the two agreements over two days in April 2002 and matters related to equitable distribution, alimony, custody, and child support in August and November 2004. The April 2002 hearings resulted in a partial final judgment in which the trial court determined that the antenuptial agreement and postnuptial agreement "are deemed voidable by the Wife and are hereby declared to be void and of no force and effect." The 2004 hearings resulted in the final judgment of dissolution of marriage.
The Husband's first point on appeal concerns whether the trial court erred in determining that the antenuptial agreement was voidable by the Wife. We review a trial court's determination of the voidability of an antenuptial agreement for competent, substantial evidence. Simzer v. Simzer, 514 So.2d 372, 373 (Fla. 2d DCA 1987). To support its determination that the antenuptial agreement was voidable, the trial court found, among other things, that "the facts of this case are similar to the facts" of Lutgert v. Lutgert, 338 So.2d 1111 (Fla. 2d DCA 1976), such that Lutgert should control and that the Husband gave the Wife "an ultimatum[,] `Sign or no marriage[,]'" upon presenting the agreement to her within twenty-four hours of the wedding. Under Lutgert, when one party to an antenuptial agreement enjoys a "grossly disproportionate benefit" and when there are "sufficient coercive circumstances surrounding the execution of the agreement as to give rise to a presumption of undue influence or overreaching," that party has the burden of coming forth with evidence on the issue of voluntariness on the part of the other party. 338 So.2d at 1115-16; see also Casto v. Casto, 508 So.2d 330, 333 (Fla.1987) (noting that one of two separate grounds for setting aside a settlement agreement is that the agreement "was reached under fraud, deceit, duress, coercion, misrepresentation, or overreaching"). Although the testimony presented at the hearings concerning the circumstances surrounding the execution of the antenuptial agreement was conflicting, our review of the transcripts leads us to conclude that there was competent, substantial evidence to support the trial court's determination as to the Wife's ability to avoid the antenuptial agreement.
We note also that, contrary to the trial court's order finding that the antenuptial agreement was both "voidable by the Wife" and "void," the agreement is only voidable by the Wife; it was not void ab initio. See Restatement (Second) of Contracts § 7 cmt. b (1981) ("Typical instances of voidable contracts are those . . . where the contract was induced by fraud, mistake, or duress. . . ."); Lutgert, 338 So.2d at 1117 (concluding that "[t]he wife is entitled to avoid the agreement"). This distinction has significant consequences with respect to whether the postnuptial agreement ratified the antenuptial agreement, an issue that, as we note below, the trial court will need to consider on remand. See Restatement (Second) of Contracts § 174 cmt. b ("The distinction between `void contract' and a voidable contract has important consequences. For example, a victim of duress may be held to have ratified the contract if it is voidable, but not if it is `void.'"); Davis v. Hefty Press, 152 Fla. 385, 11 So.2d 884, 886 (1943) (duress *1260 in execution of mortgage-related instrument would make the instrument voidable, not void, and thus subject to ratification). Our affirmance of the trial court's ruling on the antenuptial agreement is thus limited to the court's determination that the agreement is voidable by the Wife.
We next consider the Husband's challenge to the trial court's rulings regarding the postnuptial agreement. The trial court's sole finding to support the postnuptial agreement's voidability was that it did "not cure the defects in the first Ante-Nuptial Agreement especially since the Wife still did not have her own counsel." As the Husband correctly points out on appeal, the lack of competent counsel is an erroneous basis for setting aside such an agreement. See Casto, 508 So.2d at 334. The first part of the trial court's rulingthat the later agreement does not cure the defects of the earlier oneis a conclusory statement for which no factual findings were made. Further, the trial court "deems" the postnuptial agreement to be voidable by the Wife and declares it to be void without identifying or addressing either of the two separate grounds upon which such an agreement may be challenged. See id. at 333 (listing the two grounds as, first, that the agreement was reached as a result of duress, etc., and second, a multi-element, burden-shifting test in which unreasonableness and either concealment by the defending spouse or lack of knowledge by the challenging spouse must be established).
We must therefore reverse the trial court's determination regarding the postnuptial agreement and remand for the court to make specific findings as to whether the postnuptial agreement is voidable by the Wife based on either (or both) of the two grounds delineated in Casto. See id. If the trial court determines that the postnuptial agreement is not voidable by the Wife, the court must then address the issue of whether, as the Husband contends, the postnuptial agreement amounts to a ratification of the antenuptial agreement. See Restatement (Second) of Contracts § 174 cmt. b; Davis, 11 So.2d at 886; Zurstrassen v. Stonier, 786 So.2d 65, 71 (Fla. 4th DCA 2001) (noting that the issue of ratification is one of fact). On remand, the court may find it necessary to hold additional hearings to take evidence on this issue.
Because the proceedings on remand may require the trial court to revisit its rulings as to equitable distribution, alimony, and child support, we do not consider the points raised on appeal as to these issues at this time. Accordingly, we affirm in part and reverse in part and remand for further proceedings.
Affirmed in part, reversed in part, and remanded with directions.
KELLY, J., and NIELSEN, RICHARD A., Associate Judge, Concur.
NOTES
[1] The Wife's child from a previous relationship was adopted by the Husband but attained majority shortly after the Husband filed for dissolution; as such, this child does not play a part in these proceedings.