SLEET, Judge.
The former wife appeals the final judgment of dissolution. She specifically challenges the circuit court’s determination that the parties’ prenuptial agreement was valid and enforceable as a result of the application of laches and ratification. She does not challenge the trial court’s determination that she is not entitled to any alimony under section 61.08, Florida Statutes (2012). Because it is clear from the record that the former wife is not entitled to alimony under section 61.08, we affirm that portion of the judgment. However, we reverse the court’s determination that the parties’ prenuptial agreement was valid and enforceable. Because the trial court’s determination of equitable distribution was affected by its validation of the prenuptial agreement, we also reverse on that issue.
Facts
After living together for several years, the former husband proposed marriage to the former wife on February 14, 2002. The former husband first mentioned a prenuptial agreement to the former wife in early June 2002. He delivered the first draft of the prenuptial agreement in late June 2002, less than one month before their July 13, 2002, wedding date. Upon delivery of the first draft, the former husband gave the former wife the names of a few attorneys to consult with regarding the prenuptial agreement. The former wife met with an attorney on July 2, 2002, eleven days before the wedding.[1] The attorney initially advised her not to sign the prenuptial agreement because it waived all of her rights to an elective share, required a release of any interest in assets acquired during the marriage, and waived her rights to any form of alimony or award of attorney’s fees. Nevertheless, the attorney told the former wife that she would contact the former husband’s attorney in an attempt to revise the agreement. Unfortunately, the former wife did not hear from her attorney again until after the wedding.
The wedding took place in Las Vegas, and the former wife left a few days early to begin preparations. The next time she saw the prenuptial agreement was when she picked up the former husband at the Las Vegas airport at 11:30 p.m. the night before the wedding. He handed the final draft to her and told her to sign it and get it notarized. She frantically went about searching for a notary in Las Vegas until 2:00 a.m. and did not read the agreement before she signed it.
The final draft of the prenuptial agreement signed by the former wife was identical to the first draft except for two reví- *922 sions that allowed for limited alimony based on the former husband’s current net worth and the, former husband’s, agreement to provide her with health insurance. The former wife’s attorney received the final executed prenuptial agreement in late July after the wedding. On August 2, 2002, she sent a letter to the former wife wherein she vaguely expressed that the prenuptial agreement remained unfavorable and inequitable. Rather than advise her about -any legal recourse against the prenuptial agreement, the attorney requested that the former wife call her if she had any concerns. The former wife filed the letter away and did not pursue the prenuptial agreement further.
The former wife’s petition for dissolution of marriage did not mention the prenuptial agreement. In his answer, the former husband asserted that the prenuptial agreement should govern and settle issues of equitable distribution and support between the parties. In response, the former wife filed a verified motion to set aside the prenuptial agreement.
The motion to set aside the prenuptial agreement was heard in December 2009. The court heard testimony from the parties, their respective witnesses, and their attorneys and ruled that the former wife signed the prenuptial agreement under duress and declared it voidable, making it subject to the equitable defenses of ratification and laches. See Bakos v. Bakos, 950 So.2d 1257, 1259-60 (Fla. 2d DCA 2007). Thereafter, the court denied the motion to set aside the prenuptial agreement because the former “wife’s inaction” after being notified by her attorney of the inequity of the agreement operated as a ratification of the agreement. The court also found that the former wife’s more than six-year delay in challenging the prenuptial agreement constituted laches.
The parties proceeded to a final hearing in August 2011 and March 2012. The newly assigned trial judge agreed to rehear the issue of the validity of the prenuptial agreement along with the issues of equitable distribution, alimony, support, and fees. The judge informed the parties that any decision about alimony would not be affected by the ruling on the validity of the prenuptial agreement. After hearing testimony and evidence about the prenuptial agreement, the court reaffirmed the validity of the prenuptial agreement and deemed it enforceable as to all of the former wife’s claims. Additionally, the court heard lengthy testimony and evidence concerning equitable distribution and alimony. Although the former wife requested over $7000 a month in alimony, the former wife’s accountant could not render an opinion about the parties’ marital standard of living. The former husband’s vocational expert opined that the former wife was educated, healthy, and could earn up to $48,000 a year. The court held that “even if the prenuptial agreement were not enforceable, the former wife worked prior to the marriage, during the marriage, and since separation” and that the former wife was not entitled to alimony according to the enumerated statutory factors in section 61.08. Furthermore, the court found that the former wife did not propose a rehabilitative plan for alimony and that this was a short-term marriage with no presumption for alimony.
Review of the record demonstrates that the trial court addressed equitable distribution of the assets in accordance with the prenuptial agreement. There is no indication that the court deviated from the provisions of the prenuptial agreement concerning the post-dissolution distribution of the parties’ assets. The parties had non-marital assets they brought to the marriage and marital assets acquired during the marriage. The most substantial asset was *923 the former husband’s pawn business of which he was the sole owner. Notwithstanding, there was evidence that the former wife previously invested money in the business. The prenuptial agreement awarded the business to the former husband without any consideration as to the valuation of the business and whether the former wife was entitled to any appreciation value.
Analysis
“We review a trial court’s determination of the voidability of an antenup-tial agreement for competent, substantial evidence.” Bakos, 950 So.2d at 1259. The trial court’s application of the doctrine of laches “is reviewed for abuse of discretion, provided that there is competent, substantial evidence for each element of the doctrine.” Dep’t of Revenue ex tel. Thorman v. Holley, 86 So.3d 1199, 1202 (Fla. 1st DCA 2012).
We agree that there was competent substantial evidence to deem the prenuptial agreement voidable. See Bakos, 950 So.2d at 1259. “[Wjhen there are ‘sufficient coercive circumstances surrounding the execution of the agreement as to give rise to a presumption of undue influence or overreaching,’ [the proponent of the prenuptial agreement] has the burden of coming forth with evidence on the issue of voluntariness on the part of the other party.” Id. (quoting Lutgert v. Lut-gert, 338 So.2d 1111, 1116 (Fla. 2d DCA 1976)); see also Casto v. Casto, 508 So.2d 330, 333 (Fla.1987). Here, the former husband did not offer any evidence to demonstrate that the former wife voluntarily signed the agreement. Thus, the trial court’s analysis should have ended there and the agreement should have been set aside based upon duress and coercion.
Inexplicably, the trial court went where no Florida court has gone before and raised the defenses of ratification and laches, relying on Bakos to support its decision to uphold the prenuptial agreement. Bakos is factually distinguishable because while the parties executed a prenuptial agreement the day before the wedding, they also executed a postnuptial agreement six years into the marriage. The issue before our court was thus whether the voidable prenuptial agreement could be ratified by the postnuptial agreement. Here, there is no such issue.
 Ratification occurs when a party entitled to rescind a voidable contract fails to do so after the discovery of facts that warrant a rescission. Steinberg v. Bay Terrace Apartment Hotel, Inc., 375 So.2d 1089, 1092 (Fla. 3d DCA 1979). In general, “[ljaches is an omission to assert a right for an unreasonable [] length of time, under circumstances prejudicial to the adverse party.” Miami-Dade Cnty. v. Fernandez, 905 So.2d 213, 216 (Fla. 3d DCA 2005) (second alteration in original) (quoting Ticktin v. Kearin, 807 So.2d 659, 663 (Fla. 3d DCA 2001)).
The parties concede that no case in Florida, nor any case in any other jurisdiction, has held that the equitable defenses of ratification and laches apply to validate a voidable prenuptial agreement on the basis that the disadvantaged spouse did not take some form of legal action during the parties’ intact marriage to challenge the agreement. Other jurisdictions have declined to apply ratification and laches because it would be contrary to public policy to force a spouse who wanted to challenge the enforceability of a prenuptial agreement to do so prior to the dissolution of the marriage by death or divorce. See In re Estate of Hollett, 150 N.H. 39, 834 A.2d 348, 353 (2003) (declining to consider “the wife’s delay in challenging the agreement as substantive evidence of the agreement’s voluntariness or ratification”); In *924 re Flannery’s Estate, 315 Pa. 576, 173 A. 303, 304 (1934) (holding that laches did not bar a wife from challenging the prenuptial agreement during marriage and noting that in litigation between spouses “presumptions or estoppels by lapse of time, ordinarily, do not affect the rights of the wife”); Baker v. Baker, 24 Tenn.App. 220, 142 S.W.2d 737, 748 (1940) (explaining that it would go against public policy to require a spouse to challenge a prenuptial agreement during marriage); Kellar v. Estate of Reliar, 172 Wash.App. 562, 291 P.3d 906, 918 (2012) (refusing to apply the doctrines of ratification and laches because “considering a wife’s delay in challenging a prenuptial agreement as evidence of ratification would penalize the wife for choosing not to disrupt her marriage”) review denied, 178 Wash.2d 1025, 312 P.3d 652 (2013).
We agree with the above jurisdictions and decline to apply the equitable defenses of ratification and laches to validate a prenuptial agreement based upon a spouse’s failure to seek revision, amendment, or to set aside a prenuptial agreement during the parties’ marriage.
The trial court fully considered the issue of alimony independent of its ruling concerning the validity of the prenuptial agreement. The record demonstrates that the trial court contemplated the issue of alimony in light of the statutory factors of section 61.08, and determined that the former wife was not entitled to alimony except as provided in the prenuptial agreement. Because we hold that the prenuptial agreement was invalid, the wife is not entitled to any alimony on remand. However, because we cannot determine the effect of the prenuptial agreement on equitable distribution, we remand for the trial court to reconsider the issue of equitable distribution absent the prenuptial agreement and to make specific findings thereon. Upon remand, the court shall consider the factors of section 61.075 including the valuation of the pawn business and whether the former wife is entitled to any interest therein. We affirm the final judgment of dissolution in all other respects.
Affirmed in part; reversed in part; remanded with directions.
VILLANTI and WALLACE, JJ., Concur.

. We note that the attorney the wife consulted regarding the prenuptial agreement is not the same attorney who now represents her on appeal.