# Third District Court of Appeal

## State of Florida

Opinion filed May 12, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1119
Lower Tribunal No. 88-43278
_____

**Pablo Delgado,**
Appellant,

vs.

**Marilyn Delgado,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Migna Sanchez-Llorens, Judge.

Herrera Law Firm, P.A., and Jose-Trelles Herrera, for appellant.

Scanziani & Associates Law, P.A., and Jessica Ramirez-García, for appellee.

Before FERNANDEZ, HENDON, and GORDO, JJ.

HENDON, J.

Pablo Delgado ("former husband") appeals from the trial court's Order

on Exceptions to General Magistrate's Report and Recommendations ("Order on Exceptions"), which sustained exceptions filed by Marilyn Delgado ("former wife").  We affirm, in part, reverse, in part, and remand for an evidentiary hearing consistent with this opinion.

In 1989, a final judgment of dissolution of marriage was entered, ratifying the Property Settlement Agreement ("Agreement") entered into by the former wife and the former husband.  The Agreement provides, in pertinent part, as follows:

> 6. **<u>CHILD SUPPORT</u>**:  The Husband shall pay to the Wife, for support maintenance of the minor child, Pablo Delgado, Jr., born November 1, 1979, age 9, the sum of $500.00 per month, the first payment being due on June 1, 1989 and continuing thereafter on the first day of each succeeding month.
>
> a. <u>Creation of Trust</u>.  The Husband shall pay 15% of the profits of his current business known as Delgado's Warehouse to the Wife, as trustee for Pablo Delgado, Jr. . . .  The Wife shall open an account as Trustee to receive such payments. The Husband shall make payments to the trust not less than annually . . . .  The funds accumulating in said account shall be used for the child's college or other post-high school education. This provision shall apply to any subsequent or successor business of the Husband.
>
> b. <u>Payment on sale of property.</u>  The Husband's business owns real property legally described on the attached Exhibit A.  Upon the sale of the property, 50% of the net proceeds shall be placed in the trust.  The Husband agrees not to cause any other liens to be placed on the property without the consent of the Wife.  A memorandum of this agreement shall be placed in the public records.
>
> c. <u>Modification and Termination.</u>  The support rights of the child shall terminate and the obligation of the Husband to pay child support shall cease upon the occurrence of any one of

2

the following: . . . . ii) Attainment of his eighteenth birthday[.]

. . . .

11. **MODIFICATION AND WAIVER:** A modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement[1]. The failure of either party to insist upon strict performance of any of the provisions of this Agreement shall not be construed as a waiver of any subsequent default of the same or similar nature.

In October 2018, the former husband sold the property referenced in paragraph 6.b. of the Agreement for $412,000. Due to a lis pendens filed by the former wife and the parties' now-adult child, Pablo Delgado, Jr. ("Pablo Jr."), the title company held 50% of the net proceeds from the sale in escrow for the former wife, as trustee.

Thereafter, the former wife filed a "Verified Motion for Enforcement and/or Contempt of the Parties' Property Settlement Agreement and Final Judgment" ("Motion for Enforcement"). In the motion, the former wife referenced paragraphs 6.a.-b. and 11 of the Agreement, and requested, among other things, that (1) the former husband be ordered to pay the former wife all outstanding child support and 15% of the annual profits from Delgado's Warehouse, and (2) the title company be ordered to disburse to

---

[1] The Settlement Agreement was notarized and witnessed by two witnesses for each party.

the former wife the funds held in escrow from the sale of the subject property.

The trial court referred the matter to a General Magistrate. At the evidentiary hearing, the former wife, the former husband, and Pablo Jr. testified. The evidence showed that the former wife never opened the trust account referenced in the parties' Agreement, and the parties did not modify the Agreement or waive any provision in the Agreement.

As to child support, the former wife testified that the former husband paid $500 per month in child support for a few months, but he then reduced the payment to $250 per month, and he failed to pay any child support for a six-month period. In contrast, the former husband testified that he paid all child support due under the Agreement except for a six-month period, but he no longer has any paperwork to establish the amounts paid. As to Delgado Warehouse, the former husband testified that the business never earned a profit and, therefore, no money was placed in trust for Pablo Jr.

The former husband also testified as to other payments made on behalf of Pablo Jr. not required under the terms of the parties' Agreement while Pablo Jr. was a minor. For example, he purchased Pablo Jr. a $20,000 vehicle when he was sixteen years old, and the former husband paid the required insurance on the vehicle. Moreover, the former husband, along with

4

the former wife, contributed to Pablo Jr.'s private school education.[2]

The testimony showed that the former husband and his current wife relocated to the Sebring/Lake Placid area, and Pablo Jr., while an adult, lived with the former husband for a while. Pablo Jr. eventually moved out, married, and had children of his own. The former wife, along with her husband, moved to the area and the parties and their respective spouses were neighbors for several years. The former wife never raised the issue of delinquent child support to the former husband. Moreover, the former husband lent the former wife and her current spouse $50,000, and when the former wife repaid the former husband, she repaid the full amount and did not mention the $3,000 in delinquent child support.

As to Pablo Jr.'s college and post-high school education, the testimony reflects that the former wife purchased a Florida Prepaid College Plan for Pablo Jr., and he attended community college for two semesters. Moreover, Pablo Jr. attended plumbing school for several months, but did not finish. During the hearing, Pablo Jr. did not offer any plans as to college and/or post-high school education. The testimony also showed that the remaining Prepaid College Plan was utilized to pay for Pablo Jr.'s wedding and for

---

[2] The former husband also testified as to financial assistance he provided to Pablo Jr. while an adult.

Pablo Jr. to purchase a house.

During the hearing before the General Magistrate, the former husband's counsel attempted to argue that laches is available as to the former wife's request for child support arrearages, but the General Magistrate stated that laches was not properly raised. The trial court allowed the former husband to proffer an argument as to laches.

At the conclusion of the hearing, the General Magistrate reserved ruling. On December 24, 2019, the General Magistrate entered his Report and Recommendations on the former wife's Motion for Enforcement ("Report"). At the time that the Report was entered, Pablo Jr. was forty years old and was emancipated twenty-two years earlier.

As to the former wife's request for child support arrearages, the General Magistrate found that the former wife failed to give a reasonable explanation as to why she waited twenty-two years after Pablo Jr.'s emancipation to bring the child support enforcement action, noting that the parties were neighbors in Lake Placid, and the former wife did not raise the issue of delinquent child support to the former husband or file a motion to recover any child support prior to this action. The General Magistrate found that the former husband failed to raise laches and failed to provide any written proof of payment of child support. However, "he has paid for other

6

expenses of the minor child which more than satisfy any delinquent child support." Thus, the General Magistrate recommended that the trial court deny the former wife's Motion for Enforcement as the former husband "has adequately supported his son and does not owe any child support arrears."

As to the former wife's request relating to the trust, the General Magistrate found that the language in the Agreement as to the educational trust for Pablo Jr. is clear and unambiguous, and the trust funds are to be used for Pablo Jr.'s college or post-high school education. Further, the General Magistrate found that Pablo Jr. is currently forty years old, and at the hearing, he did not offer plans for college or post-high school education. Thus, the General Magistrate found that the trust is not needed for the intended purpose of funding Pablo Jr.'s college and/or post-high school education. The General Magistrate stated that under section 736.0409 of the Florida Statutes, property not required for the intended use of a trust must be distributed to the settlor. Thus, the General Magistrate recommended that the trial court rule that the money held in escrow by the title company shall be disbursed to the former husband.

The former wife filed Exceptions to Report of General Magistrate Dated December 24, 2019 and/or Motion to Vacate and/or Set Aside the Findings and Recommendations of the General Magistrate ("Exceptions to Report").

7

The former wife took exception to, among other things, the General Magistrate's findings/recommendations that (1) the former husband does not owe any child support arrearage despite the former husband's admission that he did not pay child support for a six-month period; and (2) the former husband does not have to fund the trust as Pablo Jr. did not attend college except for a couple of semesters, asserting that the former husband should fund the trust in accordance with the parties' Agreement and that Pablo Jr. is entitled to receive those funds as the funds are for his benefit.

The trial court entered an Order on Exceptions to General Magistrate's Report and Recommendations ("Order on Exceptions"), sustaining the exceptions relating to both child support and the trust/disbursement of the funds held in escrow. As to the former wife's exception relating to child support, the trial court noted that there is no statute of limitations on child support enforcement actions in Florida. However, laches is generally applied to determine whether an action is barred, but the former husband waived laches.

The trial court, however, concluded that the record clearly established that there was a six-month child support arrearage owed by the former husband, and reserved jurisdiction to adjudicate the six months of support. In making this determination, the trial court (1) noted that the parties had not

8

modified their Agreement in writing as required by the Agreement, and (2) relied on this Court's decision in <u>Onley v. Onley</u>, 540 So. 2d 880 (Fla. 3d DCA 1989).

In <u>Onley v. Onley</u>, 540 So. 2d 880 (Fla. 3d DCA 1989), this Court reversed the trial court's decision to give the child's father a $2,000 credit on the child support arrearages he owed because the vehicle he gave his son cost $2,000.  In <u>Onley</u>, this Court held:

> It is well settled that support obligations accruing under a court order in a domestic case become vested rights of the payee and vested obligations of the payor which are not subject to retroactive modification.  In the absence of some showing— which was not present here—that a payment to or on behalf of the child served to discharge a duty of support encompassed by the order in question, . . . such a payment, if unilaterally made without the authority of court, cannot serve to discharge or reduce the requirements imposed upon the non-custodial parent.

<u>Onley</u>, 540 So. 2d at 880-81 (internal citations omitted).  In addition, in <u>Onley</u>, this Court stated that "mere gratuities" cannot be set off.  <u>Id.</u> at 881.  In concluding that the trial court erred by giving Mr. Onley a $2,000 credit for the vehicle he provided to the parties' son, this Court stated: "However well-intentioned, Onley had neither authorization nor right to modify by self-help the simple terms of a court order that he periodically pay *his ex-wife* a designated sum of money for the children's support."  <u>Id.</u> (italics in original).

As to the former wife's exception relating to the trust for Pablo Jr.'s

9

college or post-high school education, the trial court found that the provisions in the Agreement are clear and unambiguous and have not been modified and/or waived in writing, and therefore, must be performed. The trial court found that the General Magistrate erred by relying on section 736.0409(3), Florida Statutes (2020),[3] because the trust was never created. Further, the trial court concluded that the Agreement is still binding, and the parties are able to perform in accordance with the Agreement.[4] The trial court also concluded that the "General Magistrate's Report was clearly erroneous in

---

[3] Section 736.0409, Florida Statutes (2020), provides:
> **Noncharitable trust without ascertainable beneficiary.—** Except as otherwise provided in s. 736.0408 or by another provision of law, the following rules apply:
> (1)  A trust may be created for a noncharitable purpose without a definite or definitely ascertainable beneficiary or for a noncharitable but otherwise valid purpose to be selected by the trustee. The trust may not be enforced for more than 21 years.
> (2)  A trust authorized by this section may be enforced by a person appointed in the terms of the trust or, if no person is appointed, by a person appointed by the court.
> (3)  Property of a trust authorized by this section may be applied only to the intended use of the property, except to the extent the court determines that the value of the trust property exceeds the amount required for the intended use. Except as otherwise provided in the terms of the trust, property not required for the intended use must be distributed to the settlor, if then living, otherwise as part of the settlor's estate.

[4] We take no issue with this determination. Moreover, this provision pertains to trusts without an ascertainable beneficiary. Here, Pablo Jr. would be the only beneficiary of the instant trust, and therefore, there is an ascertainable beneficiary.

10

adjudicating on the issues related to the trust prematurely as the parties are still bound to perform their obligations in the Agreement." The trial court reserved jurisdiction to address the use of the funds. The former husband's non-final appeal followed.

The former husband contends that the trial court erred by sustaining the former wife's exceptions as to both the child support and the trust. We agree, in part.

We agree with the majority of the trial court's ruling on the former wife's exceptions to the General Magistrate's Report as set forth in the trial court's Order on Exceptions. As the trial court correctly determined, the parties' Agreement is clear and unambiguous and has not been modified by the parties. As to child support, the trial court correctly determined that the former husband admitted to not paying child support for a six-month period, and therefore, there is a six-month child support arrearage. Further, the trial court properly determined that the arrearage cannot be set-off by other payments or gifts made while Pablo Jr. was a minor based on the reasoning set forth in Onley, as any gifts or payments on behalf of Pablo Jr. were unilaterally made without authority of court and did not serve to discharge a duty of support encompassed by the Agreement.

We do, however, take issue with the trial court's determination that the

11

former husband failed to raise the equitable defense of laches, and therefore, we reverse that portion of the Order on Exceptions. In her answer brief, the former wife conceded "that the equitable defense of laches was not waived." The former wife, however, argued that under the "tipsy coachman doctrine," the Order on Exceptions should be affirmed because the former husband failed to establish the requirements necessary to establish laches. To establish the defense of laches, the former husband was required to prove the following:

> (1) conduct by the defendant that gives rise to the complaint; (2) that the plaintiff had knowledge of the defendant's conduct and did not assert the opportunity to institute suit; (3) lack of knowledge by the defendant that the plaintiff will assert the right upon which suit is based; and (4) extraordinary injury or prejudice.

Ticktin v. Kearin, 807 So. 2d 659, 664 (Fla. 3d DCA 2001) (citing Dean v. Dean, 665 So.2d 244 (Fla. 3d DCA 1995)); see also Dep't of Revenue v. Holley, 86 So. 3d 1199, 1203 (Fla. 1st DCA 2012). "A trial court's application of the doctrines of either laches or equitable estoppel is reviewed for abuse of discretion, provided there is competent, substantial evidence for each element of the doctrine applied." Holley, 86 So. 3d at 1202-03. Here, as the trial court has not made such a determination, we remand with instructions

12

for the trial court to conduct an evidentiary hearing as to the issue of laches.[5]

Following the evidentiary hearing, if the trial court determines that the former husband failed to establish the necessary elements to apply laches to the child support arrearage, the trial court, as reserved in its Order on Exceptions, is instructed to adjudicate the six month child support arrearage.[6]

As to the trial court's ruling relating to the trust, the former husband agrees that the provisions in the Agreement are clear and unambiguous, but argues that the trial court rewrote the clear and unambiguous Agreement. We disagree.

---

[5] We take no position.

[6] As Judge Cope stated in Garcia v. Guerra, 738 So. 2d 459, 464 (Fla. 3d DCA 1999):

> In our view, it would be helpful to the courts and litigants if the legislature would adopt an explicit statute of limitations establishing a fair time period for bringing arrearage actions. A bright-line rule would assist counsel in advising clients when claims are viable, and when they are not. As matters now stand, arrearage claims continue to be brought after very lengthy delays . . . . In the absence of an explicit limitation period, laches requires a case-by-case determination of the limitation period— a slow and expensive process.

(citations omitted; footnote omitted).

13

The former husband argues that the Agreement defines the specific intent and purpose of the trust, "but also clearly and logically the duration of any obligation." We disagree, in part, as the Agreement does not set forth a time limit in which Pablo Jr. must attend college or post-high school education. Despite Pablo Jr. being more than forty years old at this point, the terms of the Agreement are still capable of being fully performed as Pablo Jr. may decide to attend college or pursue post-high school education. Thus, as the trial court ruled, the former wife must open a trust account and the escrowed funds are to be deposited in that account.

As stated earlier, Pablo Jr. did not testify as his plans to attend college or pursue any further post-high school education. Thus, on remand, the trial court is instructed to conduct an evidentiary hearing to determine Pablo Jr.'s plans, and thereafter, based on his testimony, "address the use of the funds" as set forth in its reservation of jurisdiction in the Order on Exceptions.

The remaining arguments raised by the former husband do not merit discussion. Accordingly, we affirm, in part, and reverse, in part, the Order on Exceptions, and remand for further proceedings consistent with this opinion.

Affirmed, in part; reversed, in part, and remanded for further proceedings.